470 A.2d 61

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charles W. OHLE and Ronald J. Jackson, Appellees.**

Supreme Court of Pennsylvania.

Argued May 27, 1983.

Decided Dec. 14, 1983.

Richard A. Lewis, Dist. Atty., William A. Behe, Deputy Dist. Atty., Katherene Holtzinger, Harrisburg, for appellant.

Smith B. Gephart, Harrisburg, for appellees.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The Commonwealth appeals by allowance Superior Court's orders reversing judgments of sentence Dauphin County Common Pleas imposed on appellees. Superior Court granted appellees a new trial after a jury convicted them of theft, and quashed additional indictments against appellee Ohle for bribery and conspiracy.[1] All these arose out of a kickback scheme involving Pennsylvania's former Secretary of Property and Supplies, Frank Hilton, who had the power to enter into insurance contracts on behalf of the

---

1. Bribery and conspiracy charges against Jackson were not before Superior Court, but remain pending after a mistrial.

Commonwealth. We vacate Superior Court's order and remand this record to it for further proceedings consistent with this opinion.

## I

Appellees Charles W. Ohle and Ronald J. Jackson, officers of a New York insurance brokerage firm, were charged with three counts of theft by failure to make required disposition of funds to the insurance carrier which underwrote an auto fleet policy for the Commonwealth of Pennsylvania; bribery in official and political matters, and conspiracy to commit bribery in connection therewith. All these charges arose out of their participation in the Hilton kickback scheme.

In June of 1977, they were tried jointly on the theft charges and convicted. In November, 1977, a joint trial on the bribery and conspiracy charges began. Jackson became ill and a mistrial was declared as to these charges against him. *See supra* n. 1. Ohle's trial continued. He was convicted of both bribery and conspiracy.

On the theft charges the trial court sentenced Ohle and Jackson to pay a fine of $1,000 and the costs of prosecution, to make restitution of $304,500 each to the Commonwealth and to terms of three to five years imprisonment. Ohle was also sentenced to pay a fine and serve a term of one to two years, concurrent with the theft sentence on the conspiracy charge; for bribery he received a $500 fine and six months to one year in prison, concurrent with his sentences for theft and conspiracy. All sentences were under our former Penal Code.

Both Ohle and Jackson filed post-trial motions for new trials and in arrest of judgment. Dauphin County Common Pleas heard and denied them *en banc*. 100 Dauph. 95 (1978). They appealed to Superior Court. It reversed the theft convictions of both and remanded those cases for a new trial. It not only reversed Ohle's convictions for bribery and conspiracy, but also quashed the indictments on these charges. 291 Pa.Superior Ct. 110, 435 A.2d 592

(1981). It determined he was improperly indicted under our present Crimes Code because elements of both crimes occurred before its effective date, and an "affirmative defense" to a charge of bribery, available under the Penal Code, was not available under the Crimes Code.[2]

Superior Court held that the trial court had jurisdiction to hear the theft charges despite the fact that the inaction which Pennsylvania would consider a failure to make required disposition of funds occurred in New York. Nevertheless, it also held that Common Pleas erred in refusing appellees' requests to charge the jury on various aspects of New York insurance law and by failing to direct the jury to find appellees not guilty if their failure to remit to the insurance carrier was not illegal under New York civil law governing insurance brokers.

For the reasons which follow, we vacate these orders of Superior Court and remand to it for disposition of the remaining issues, consideration of which was unnecessary under the orders we now vacate.[3]

## II

The factual background of this case, while involved, is not in dispute. The thefts involved premiums of more than one million dollars for the Commonwealth's insurance policy

2. The Crimes Code, Act of December 6, 1972, P.L. 1482, effective June 6, 1973, 18 Pa.C.S. § 101 et seq., replaced the Penal Code, June 24, 1939, P.L. 872.

3. Because of its determination of the jury charge and indictment issues, Superior Court did not address other allegations of trial error made by appellees. These issues are: (1) failure of the trial court to grant a mistrial after revealing its decision to deny appellees' demurrer to the evidence to the news media, which report was read by several jurors; (2) refusal of the trial court to dismiss the conspiracy charge on grounds of merger; (3) refusal of the trial court to dismiss the bribery and conspiracy charges because only uncorroborated testimony of accomplices was introduced; (4) refusal of the trial court to grant a mistrial based on a Commonwealth witness's reference to appellee's prior criminal record. (The last three allegations of error apply only to appellee Ohle). Based on our resolution of the Commonwealth's appeal, we remand these issues to Superior Court so that it may properly determine their merits.

covering its automobile fleet. These were due the Reserve Insurance Company of Chicago, Illinois (Reserve), through Charles W. Ohle, Inc., a New York brokerage firm. Defendants were the principals of that broker. Ohle is a resident of New York and Jackson is a resident of New Jersey. On July 25, 1974 a Commonwealth premium check for $500,000.00 payable to Market Facilities, Inc., a subsidiary of Reserve, and Charles W. Ohle, Inc., the broker, was delivered to the latter. On August 5, 1974 a second check for $300,000.00 payable to the same Reserve subsidiary and Charles W. Ohle, Inc. was also delivered to it. Finally, on September 26, 1974 a check for $215,000.00 payable to the same payees was also delivered to Charles W. Ohle, Inc.

Defendants caused these payments to be deposited in the brokerage firm's account without the other payee's endorsement.[4] Then, through their control of the brokerage account, they withheld more than $600,000 admittedly due Reserve. The issue of whether the withheld funds are due Reserve was the subject of Reserve's civil action against the Commonwealth. The outcome of that action is not shown on this record.

After the theft charges were filed, our Department of Justice brought additional charges of bribery and conspiracy against defendants. These were the subject of the second trial. The testimony produced showed that from February, 1973 through September, 1974 defendants made kickback payments totalling approximately $176,000.00 to Frank Hilton and Anthony Trucco. Hilton was then Secretary of Property and Supplies for the Commonwealth of Pennsylvania. Trucco was the Director of that Department's Insurance Division. The kickbacks were in consideration of Hilton's appointment of Charles W. Ohle, Inc. as broker for the automobile fleet insurance policy.

The discussions which led to Hilton's appointment of defendants' New York corporation as broker in considera-

4. Although the checks were co-payable as mentioned previously, the defendants were authorized by the insurance company to endorse and deposit the checks into the Charles W. Ohle, Inc. bank account.

tion of their kickback agreement began in February, 1973, before the effective date of our Crimes Code, *see supra* at n. 2, when co-conspirator Trucco met with defendant Ohle in New York City. At that time the crimes of bribery and conspiracy were governed by the Penal Code. Nevertheless, the indictments used the language of the Crimes Code in making these charges. The complaint, however, had alternatively cited both the Penal Code and Crimes Code sections.

## III

Superior Court correctly held defendants indictment for the theft offense fell under the Crimes Code, rather than the Penal Code, and that Dauphin County Common Pleas had jurisdiction to hear the case.[5] However, Superior Court erred in reversing appellees' convictions and remanding for a new trial. Superior Court held the trial court erred in refusing to charge the jury on the New York civil law of insurance. Superior Court would have directed the jury to

5. Appellees do not now challenge either of these holdings. With respect to which statute applies, the transitional savings clause appended to the official version of the Crimes Code provides, in relevant part: "[f]or the purposes of this section, an offense was committed prior to the effective date of this act if any of the elements of the offense occurred prior thereto." Act of December 6, 1972, P.L. 1482, No. 334, § 2. The failure to make required disposition took place in 1974 after appellees received the premium checks. The Crimes Code was then effective. With respect to territorial jurisdiction Crimes Code Section 102(a), 18 Pa.C.S. § 102(a) provides, in relevant part:

§ 102. Territorial applicability

(a) General rule.—Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:

(1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth;

. . . .

(5) the offense consists of the omission to perform a legal duty imposed by the law of this Commonwealth with respect to domicile, residence or a relationship to a person, thing or transaction in this Commonwealth;

. . . .

Section 102 is similar to Section 103 of the Model Penal Code, discussed in Leflar, *Conflict of Laws: Choice of Law in Criminal Cases,* 25 Case Western Res.L.Rev. 44, 60–61 (1974).

find appellees not guilty if it found New York civil law treated payment to the broker as payment to the insurance company.[6]

■ The issue of whether payment to a faithless agent is the same as payment to his principal, relevant in a civil action between the principal and a third party, is irrelevant to the determination of whether that faithless agent acted criminally in withholding funds due his principal. In finding this issue determinative of the Commonwealth's jurisdiction, Superior Court incorrectly separated the issue of jurisdiction from those "choice of law influencing considerations beyond due process" which some commentators believe should influence the question of jurisdiction in criminal cases.[7]

■ Both the Superior Court opinion and appellees' brief refer to this issue as a jurisdiction-related fact question. They then proceed, however, to treat it as a separate conflict of laws question on the propriety of requiring the

6. The points for charge submitted by appellees, read in part to the jury, are as follows:

Under the law, endorsement of a check by the proper person to make such endorsement constitutes an actual and legitimate payment of an obligation. *If you find from the evidence that either Defendant had the authorization of officers of The Market Facilities, Inc. to endorse said company's name on the checks of the Commonwealth and deposit them in the bank account of Charles W. Ohle, Inc., then you must find that payment was made to the insurance company, and you must find Defendants not guilty.*

Under the Insurance Law of the State of New York when an insurance company entrusts its policies to a broker for delivery to the insured, the broker acts as an agent for the insurance company in collecting and receiving premiums, and payment to the broker is deemed payment to the insurance company. *Therefore, if you find that Defendants received payment of the insurance premium from the Commonwealth of Pennsylvania, you must find that the obligation of the Commonwealth of Pennsylvania was discharged, because payment to the broker was payment to the insurer. Any subsequent failure to transmit moneys to the insurance company would not constitute a violation of the criminal statute under which Defendants are charged.*

(The emphasized portions are those sections of the submitted jury charges *not* read by the trial court).

7. *See* Leflar, *supra*, note 5.

jury to apply certain aspects of New York insurance law to this case in determining appellees' guilt. This analysis confuses the issue of the trial court's jurisdiction, *i.e.,* its power to hear and decide the case, with the conflicts principles arguably affecting that power.[8] In so doing, Superior Court misapplied the choice of law principles set forth by Professor Leflar, formerly Justice Leflar of the Arkansas Supreme Court, in Leflar, *Conflict of Laws: Choice of Law in Criminal Cases,* 25 Case Western Res.L.Rev. 44 (1974). The Leflar article, cited by both appellees and the Commonwealth, criticizes the traditional territorial method of determining the applicable law in criminal cases and recommends instead use of certain "choice influencing" considerations suggested by the author. This choice influencing analysis goes beyond both the traditional territorial view of criminal jurisdiction and the analysis in terms of statutory construction employed in some jurisdictions. The latter two restrict jurisdiction only by due process considerations of fairness and contacts with the forum.

Whatever the analysis, jurisdiction to hear the case is the fundamental question to which conflict of laws "choice influencing" considerations are to be applied.[9] A finding that there is jurisdiction will result in the forum law's application "since the case will not be heard unless it is proposed to apply the forum's law to it." Leflar, *supra* p. 10, at —— – ——. "Choice influencing" considerations will, if

8. Despite the confusion of terms in Superior Court's opinion and appellees' brief, the remand of the theft charges for a new trial indicates Superior Court concluded that Dauphin County Common Pleas had jurisdiction, and appellees do not now contest this determination. *See* Brief for Appellees at 8, where it is stated that "Superior Court correctly ordered a new trial...."

9. Leflar, *supra,* at ——.
   The question of jurisdiction and of choice of law combine as one question—is the forum's substantive criminal law properly applicable to the facts? A preliminary part of the question is whether federal due process requirements would be satisfied if forum law were applied. If not, the question is answered. But if due process would be satisfied, the common law part of the question remains. That is when the choice-influencing considerations should be taken into account.

applicable, allow the court to appeal to the criminal, not civil law of another state which has an interest in the case. According to Leflar, three choice influencing considerations are relevant in criminal cases. They are predictability of results, interstate orderliness in the law's administration and advancement of the forum's governmental interests. All three support the application of Pennsylvania law to this case. *See* Leflar, *supra,* at ———–——.

The wording offered by appellees would have improperly decided the underlying conflict of laws issue by requiring the jury to apply the civil law of New York in determining appellees' guilt, rather than the law of Pennsylvania. Appellees' submitted instructions would not only have made New York criminal law controlling in determining appellees' criminal liability in Pennsylvania, but would have made controlling the insurance law of New York and its attendant principles of agency determinative.

■ The trial court committed no error in refusing this instruction and thus applying the law of the forum, Pennsylvania. It is a basic proposition of conflict of laws in criminal cases that "the question of jurisdiction and that of governing substantive law always receive the same answer. The governing law is always that of the forum state, if the forum court has jurisdiction." *See* Leflar, *supra,* at 47.

■ *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), cited by appellees, is not to the contrary. *Richards,* a civil case arising under the Federal Tort Claims Act, states that "where more than one state has sufficiently substantial contact with the activity in question, the forum state, ... could constitutionally apply to the decision of the case the law of one or another state having such an interest." 369 U.S. at 15, 82 S.Ct. at 594. It thus allows a court, consistent with the protection granted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to apply the substantive law of another jurisdiction in certain cases. Such an application, however, is not mandated. Moreover, that

substantive law must be the appropriate substantive law, in this case the criminal law of New York, not its insurance law. Appellees' argument, and the wording of their proffered instructions, would transform the agency principles of New York insurance law into criminal law principles binding in this Pennsylvania prosecution. Such a result is not justified under any conflict of laws analysis.

Appellees' argument that their receipt of the premium checks as agents of Reserve Insurance Company constituted payment to Reserve is simply additional evidence of their persistent confusion of civil law agency principles with our criminal law of theft, and ignores the fact that the Commonwealth's motor fleet insurance policy was cancelled because of non-payment of premiums. Whether the Commonwealth suffered an actual loss from this cancellation is irrelevant. At the very least, appellees failed to perform their duty to transfer the premiums to Reserve, and thus also violated their legal duty under Pennsylvania law, a violation for which Pennsylvania imposes criminal sanctions. That violation substantially affected this Commonwealth's interests. It lost both the assured coverage and the defense against claims which the premium was intended to purchase. Indeed, when these charges were tried Pennsylvania was perforce litigating those issues in an action by the carrier to recover the premiums appellees had not remitted.[10]

Thus, the trial court, having jurisdiction, properly instructed the jury. It committed no error by instructing the jury on the substance of the defense put forward by appellees.

Moreover, the trial court correctly concluded appellees misstated New York insurance law. It said:

10. The outcome of that action is not relevant to these charges. When Pennsylvania remitted the premiums to cover these risks it certainly did not expect either to be relegated to a law suit in order to establish coverage, or to defend one asking it to pay again. The Commonwealth fulfilled its duty by paying the premiums to the agents. The imposition of criminal sanctions for that violation of Pennsylvania law does not preclude the Commonwealth from asserting the defense of payment in a civil suit brought by Reserve for non-payment.

The defendants rely upon the New York Insurance Law, § 121, titled "Broker authorized to receive premium, when" and *Lezak v. National Grange Mutual Insurance Co.*, 233 N.Y.S.2d 607 (Supreme Court 1962). The defendants contend Section 121 as interpreted by *Lezak* provides that payment to a broker, entrusted by the insurer with delivery of the policy to the insured, is deemed a completed payment to the insurer because the broker acts as agent for the insurer. Thus, they argue, the final element in the theft would be absent, as the defendants would not have failed to make the required disposition of the property.

This theory is faulty. The brokers are merely agents authorized to receive the premium payments but with an obligation to transmit the money to the insurer, that is to make the required disposition of the property. The parties per the insurance contract expected the premiums (net the commission) to be finally received by the insurer not the broker. Since premiums due on a policy of insurance and paid to an insurance broker for transmission to an insurance company when received by the broker become trust funds, it is the obligation of the broker, in the faithful discharge of his duty to the insured, not to intermingle such moneys with his general funds not to divert, but to keep the money separate and distinct from his own property and promptly transmit to the insurance company. 29 N.Y.Jur. Insurance § 463. *Leterman v. Pink*, [249 App.Div. 164], 291 N.Y.S. 249, 254 (Supreme Court, App.Div.1936). There is no evidence the New York legislature intended to negate the fiduciary duty of the brokers to relay the funds due to the insurer. Rather the New York legislature has codified the fiduciary capacity of the brokers for all premiums received. New York Insurance Law, § 125. *See also* 11 N.Y.C.R.R. 20.3.

100 Dauph. at 101–102.

■■■ As defined by Section 3927 of our Crimes Code, theft by failure to make required disposition of funds received has four elements: [11]

1. The obtaining of property of another;

2. Subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof;

3. Intentional dealing with the property obtained as the defendant's own; and

4. Failure of the defendant to make the required disposition of the property.

*Commonwealth v. Crafton*, 240 Pa.Superior Ct. 12, 16, 367 A.2d 1092, 1094–1096 (1976). Appellees concede that the first two elements of the crime occurred in Pennsylvania and therefore the trial court possessed jurisdiction to hear and try the case. That jurisdiction, based on 18 Pa.C.S. § 102(a)(1),[12] provides for conviction "under the laws of this

**11.** Section 3927 of the Crimes Code, 18 Pa.C.S. § 3927, provides:
§ 3927. Theft by failure to make required disposition of funds received
(a) Offense defined.—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.
(b) Presumptions.—An officer or employe of the government or of a financial institution is presumed:
   (1) to know any legal obligation relevant to his criminal liability under this section; and
   (2) to have dealt with the property as his own if he fails to pay or account upon lawful demand, or if an audit reveals a shortage or falsification of accounts.

**12.** The Commonwealth argued before Superior Court that the trial court's jurisdiction could also be based on 18 Pa.C.S. § 102(a)(5). Superior Court rejected this argument, stating that it is "clear that subsection 5 was intended to reach outside the territorial limits of Pennsylvania to prosecute those who had a duty or obligation which must necessarily have been performed within our boundaries..." 291 Pa.Superior Ct. at 126, 435 A.2d at 600. Because of our determination that § 102(a)(1) is applicable, we need not decide this issue. We note, however, that the language of subsection 5 while referring to

Commonwealth" when the "conduct which is an element of the offense ... [occurs] within this Commonwealth." Once it determined that it had jurisdiction over the case the trial court correctly refused the instructions on New York civil law which appellees requested and simply asked the jury to determine whether appellees' actions involved all four of the elements Pennsylvania law requires before imposing criminal liability for the offense of theft by failure to make required disposition of funds received.

The trial court, after it determined it had jurisdiction, properly treated the issue as a question of whether the Commonwealth had proven all the substantive elements of the crime of theft.

In refusing parts of appellees' points for charge, the trial court also held that it had covered the substance of those points in other parts of its instructions to the jury. T.T. at 355–356 (June 1, 1977). We agree.

A trial court has broad discretion in phrasing its points for charge, and is not bound to give instructions in the form requested, particularly where that form does not reflect a correct interpretation of the law. *Commonwealth v. Holland*, 480 Pa. 202, 389 A.2d 1026 (1978). Moreover, a trial court need not accept counsel's wording, but may choose its own so long as the "area is adequately, accurately and clearly presented to the jury for their consideration." *Commonwealth v. McComb*, 462 Pa. 504, 509, 341 A.2d 496, 498 (1975). Finally, an appellate evaluation of the charge must be based on an examination of it as a whole to determine whether it was fair or prejudicial. *Commonwealth v. Wortham*, 471 Pa. 243, 369 A.2d 1287 (1977).

Applying these standards and reading the charge as a whole we believe that the court properly instructed the jury on all the relevant legal issues, including its jurisdiction and appellees' contention that the money was properly disposed of, at least insofar as the legal obligation between

a "legal duty imposed by the law of this Commonwealth" makes no requirement that the duty be carried out within Pennsylvania.

the brokers and the Commonwealth was concerned. The following excerpt from the court's instructions shows that the issues raised in the refused sections of appellees' proffered instructions were in fact presented to the jury, though not in the words supplied by appellees' counsel:

> Ladies and gentlemen, so much for the facts. We think that we have generally told you, in fact we think that we have specifically told you the basis for the defense. The defense says that the state did not lose anything; that the money was sent to the defendants—or, rather, the money was sent to Market Facilities and to Charles W. Ohle, Inc. in New York, that there was an endorsement that acknowledged receipt of the payment and, therefore, Reserve Insurance Company could have no claim against the Commonwealth of Pennsylvania, that if the Commonwealth did anything in the nature of the payments, the Commonwealth of Pennsylvania was acting under either a mistake or a misunderstanding.
>
> The defense asserts that no criminal act was done until the obligation to transmit the funds to the insurance company arose and was not met. Of course, it is their contention that this obligation did not arise until sometime after the money was received in New York, that up to that point nothing wrong was done, there was nothing wrong with Mr. Ram coming to Harrisburg and taking the money, that they had a right to use the money for 45 or 60 days, and if they were unable to pay that was purely a civil problem or civil action which should exist somewhere in either New York or some other state between the defendants and the Reserve Insurance Company. The Court is giving that to you for your consideration.

T.T. at 353–354 (June 1, 1977). The trial court did not refuse the substance, but only the wording of appellees' suggested charges, thus fully and accurately presenting these issues to the jury. *McComb, supra*.[13]

---

**13.** The trial court's instructions also make clear that appellees' reliance on *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973)

## IV

Appellee Ohle was also convicted of bribery and conspiracy to commit bribery as a result of the kickbacks involving Hilton and Trucco. As stated, Jackson suffered a mistrial on these charges. Superior Court not only reversed Ohle's convictions on these charges, but also quashed these indictments against him. Superior Court's threshold determination that appellee could not have been properly convicted under the Crimes Code was plainly correct. Elements of both the bribery and conspiracy did occur before its effective date. Thus, conviction had to be under the Penal Code pursuant to the savings clause language contained in Crimes Code Section 2.[14] The indictment itself was unfortunately phrased in the language of the Crimes Code. It said:

> [O]n (or about) February, 1973, through September, 1974, in said County, one Charles W. Ohle did offer, agree to confer, and confer upon another any pecuniary benefit as consideration for the decision, opinion, recommendation or other exercise of discretion of a public servant by the recipient.
>
> Other person(s): Anthony J. Trucco and Frank J. Hilton. Public servant(s): Trucco: Director, Insurance Bureau, Pennsylvania Department of Property and Supplies.
>
> Hilton: Secretary of Property and Supplies, Commonwealth of Pennsylvania.
>
> Pecuniary benefit: $176,000
>
> Action: Did confer rebates and kickbacks to Pennsylvania officials (Hilton, Trucco) which represented a portion of premiums for insurance policies purchased by the Commonwealth of Pennsylvania to influence his selection as

and *Commonwealth v. Mull,* 316 Pa. 424, 175 A. 418 (1934) is misplaced. In *Mull* the trial court failed to instruct the jury on jurisdiction where it was very much in doubt that any element of the crime (murder) had occurred in the county. In *Bighum* the facts so overwhelmingly supported the jurisdiction of the trial court it was held not to be error for the trial court not to charge on the issue of jurisdiction.

14. Act of December 6, 1972, *supra,* note 5.

broker for said policies by Frank Hilton and Anthony Trucco.

However, that indictment included all the factual elements of the Penal Code offenses.[15]

The meeting between Trucco and Ohle in New York City, an act essential to both the bribery and conspiracy charges, occurred in February, 1973. This was prior to June 6, 1973, the effective date of the Crimes Code and thus invoked the savings clause in the Crimes Code, which provides:

Section 2.

Title 18 ... as added by this act, does not apply to offenses committed prior to the effective date of this act and prosecutions for such offense shall be governed by the prior law, which is continued in effect for that pur-

---

**15.** The Crimes Code provision dealing with bribery in official and political matters, 18 Pa.C.S. § 4701, provides:

(a) Offenses defined.—A person is guilty of bribery, ... if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:

(1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;

(2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or

(3) any benefit as consideration for a violation of a known legal duty as public servant or party official.

(b) Defenses prohibited.—It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, had left office, or lacked jurisdiction, or for any other reason.

The Penal Code provision, 18 P.S. § 4303, stated, in pertinent part:

§ 4303. Bribery of Governmental officers and employes; judges, jurors, etc.

Whoever shall directly or indirectly, or by means of and through any artful and dishonest device whatever, give or make any promise, contract or agreement, for the payment, delivery, or alienation of any money, goods or other thing, in order to obtain or influence the vote, opinion, verdict, award, judgment, decree, or behavior of any member of the General Assembly, or any officer or employe of this Commonwealth, or of any political subdivision thereof, or any judge, juror, justice, referee or arbitrator, in any bill, action, suit, complaint, indictment, controversy, matter or thing whatsoever, depending or which shall depend before him or them, is guilty of bribery, ...

pose, as if this act were not in force. *For the purposes of this section, an offense was committed prior to the effective date of this act if any of the elements of the offense occurred prior thereto.*

Emphasis added. Appellees' criminal responsibility must, therefore, be determined under the Penal Code. Appellees point out that the Penal Code arguably contains an affirmative defense of impossibility to the crimes of bribery and conspiracy to commit it, absent in the Crimes Code. *See* Crimes Code § 4701(b), note 15, *supra*, relating specifically to this offense, and generally *Commonwealth v. Henley*, 312 Pa.Superior Ct. 564, 459 A.2d 365 (1983) (allocatur granted September 27, 1983) (holding that Section 901(b) of the Crimes Code, 18 Pa.C.S. § 901(b), abrogates the defense of legal impossibility for all crimes).

■■ Appellees' argument, that the affirmative defense of impossibility would have been available to him under the Penal Code, but was overlooked because of the misleading use of Crimes Code language in the indictment, has no merit. The facts do not lend themselves to this defense under either statute. Section 4304 of the Penal Code,[16] abolished by Section 4701(b) of the Crimes Code, 18 Pa.C.S. § 4701(b), provided that the act for which the bribe is given must be one which the offeree had power to perform or influence. Although Superior Court's analysis of this issue is not totally clear, the offeree's lack of official power to accomplish the desired result is a variant of the impossibility defense. Neither this variant, nor the kind of impossibility which arises when the act the offeror assumes is prohibited is not illegal, has any application here. Hilton had power to award the insurance contract. His award of it in

---

16. 18 P.S. § 4304 provided, in relevant part:
§ 4304. Corrupt solicitation
Whoever, directly or indirectly, by offer or promise of money, office, appointment, employment, testimonial or other thing of value, or by threats or intimidation, endeavors to influence any member of the General Assembly, State, county, election, municipal or other public officer, in the discharge, performance, or nonperformance of any act, duty or obligation pertaining to such office, is guilty of corrupt solicitation, a misdemeanor, . . . .

consideration of private gain was plainly illegal. Factual impossibility is not an available defense under the Crimes Code or the Penal Code. This exhausts the available affirmative defenses. Thus, no impossibility defense could have succeeded; and, indeed, it is hard to see how its assertion would reasonably have advanced appellee Ohle's interest.

■ There is no evidence that appellee attempted to use the defense, or that he would have been precluded from invoking it had he attempted it.[17] We will not therefore approve quashing these indictments merely because an inapplicable defense is arguably precluded by that indictment.

Moreover, although the indictment was technically defective, Superior Court acted incorrectly in freezing it into its original language, without allowing any variance, despite the provisions of Pa.R.Crim.P. 213,[18] particularly since appellees were charged alternatively under both the Crimes Code and the Penal Code in the initial criminal complaint. Moreover, the trial court required the jury to find all the elements set forth in the Penal Code. Thus appellees were fully apprised of the potential application of the Penal Code to the bribery and conspiracy charges. They were on notice of any issues arising under it and should have been prepar-

17. Appellees' motion to quash these indictments makes no reference to any "affirmative defense" available under the Penal Code, although it plainly states the indictment should have been framed under it.

18. Pa.R.Crim.P. 213 provides in relevant part:
   (a) An indictment ... shall be valid and sufficient in law if it contains:
   ....
   (5) *a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint;*
   ....
   (b) The indictment shall contain the official or customary citation of the statute and section thereof or other provision of law which the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the indictment.
   ....
   Emphasis added.

ed to utilize any defense available. It is difficult to believe that experienced criminal defense counsel would have overlooked the defense of impossibility as it had traditionally existed in this Commonwealth, despite the differences in this respect between the Penal Code and the Crimes Code, especially considering the extensive commentary on that subject in the literature if it had had any application to these facts. Indeed, the extent to which impossibility is available as a defense under the Crimes Code is not yet settled. *See Commonwealth v. Henley, supra.* The more likely explanation is counsel's recognition that an impossibility defense was unavailable on these facts, a recognition this Court shares, as discussed above.

The absence of a citation to the Penal Code in the indictment is not a fatal variance under Pa.R.Crim.P. 213(b). The criminal complaint cited both the Crimes Code and the Penal Code. Moreover, the Commonwealth did provide appellee with "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint," as required by Pa.R.Crim.P. 213(a), albeit in the language of the Crimes Code. Whatever the technical differences, the offenses of bribery and conspiracy under the Penal Code are "similar" or "cognate" to those offenses under the Crimes Code. Thus, appellees had notice of the charges sufficient to permit preparation of a defense, the purpose of Rule 213.

Our position in this respect is consistent not only with our rule of criminal procedure, but also with the standards set by our case law for determining an indictment's sufficiency. "Indictments must be read in a common sense manner and are not to be construed in an overly technical sense." *Commonwealth v. Pope,* 455 Pa. 384, 390, 317 A.2d 887, 890 (1974). *See also United States v. Schoenhut,* 576 F.2d 1010 (3d Cir.1978), *cert. denied,* 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421. The purpose of the indictment is "to provide the accused with sufficient notice to prepare a defense, and to insure that he will not be tried twice for the same act." *Commonwealth v. Rolinski,* 267

Pa.Superior Ct. 199, 202, 406 A.2d 763, 764 (1979). *See also Commonwealth v. Ackerman,* 239 Pa.Superior Ct. 187, 361 A.2d 746 (1976). Furthermore, a variance is not fatal unless it "could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof or impairs a substantial right." *Commonwealth v. Pope,* 455 Pa. at 391, 317 A.2d at 890 (footnotes omitted).

Under the facts of this case, the bribery and conspiracy indictments meet these standards. The variances were not "fatal." Appellees knew, or should have known, what crimes they were charged with and what the Commonwealth would be required to prove. They should not have been surprised or prejudiced. Indeed, the trial court's instruction to the jury that appellee Ohle would have to be found guilty under both the Penal Code and Crimes Code provisions arguably gave him more than he was entitled to. On this point the trial court charged:

> However, the Commonwealth claims that even though this indictment has been written to conform with the statute which came into effect in June of 1973, nevertheless, these acts which occurred were violations of the law whether it be under the Act which took effect in 1973 or under the prior penal code. So, I'm going to read both of these statutes to you, because in order to find Mr. Ohle guilty of the crime you must find that he violated the law as to bribery not only in connection with the one act—the one that is the basis for the indictment, but also that he violated the law as it existed prior to June 6, 1973. So, I'm going to read both of these Acts to you because they are both for your consideration and it is necessary for you, when you apply the facts to the law, to be able to determine that Mr. Ohle has either violated both Acts or has not.

> If he has not, then of course he would be innocent of the charge of bribery.

T.T. at 232 (December 13, 1978). We believe this instruction cured any lingering effect which may have resulted from the variance between the complaint and the indictment.

## V

For these reasons we vacate the orders of Superior Court which granted appellees Ohle and Jackson a new trial on the charges of theft by failure to make required disposition of funds, as well as the order which reversed appellee Ohle's conviction for bribery and conspiracy and quashed the indictment against him on those charges. However, because its disposition did not require Superior Court to consider other trial errors appellees asserted, we remand the records to it for further consideration of those other issues.[19]

ROBERTS, C.J., and McDERMOTT, J., concur in the result.

NIX, J., did not participate in the consideration or decision of this case.