J-A19006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SAMIRA H. RANDOLPH-ALI | : | |
| | : | |
| Appellant | : | No. 183 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 12, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0003578-2016

BEFORE:  GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:          **FILED OCTOBER 09, 2018**

Appellant, Samira H. Randolph-Ali, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following her jury trial conviction for obstruction in the investigation of a child abuse case.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.  Procedurally, we add that Appellant timely filed a notice of appeal on January 23, 2018.  The court ordered Appellant on January 24, 2018, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on February 13, 2018.

Appellant raises the following issue for our review:

_____

[1] 18 Pa.C.S.A. § 4958(b.1).

WAS NOT THE EVIDENCE INSUFFICIENT TO SUPPORT [APPELLANT'S] CONVICTION FOR OBSTRUCTION OF A CHILD ABUSE INVESTIGATION, 18 PA.C.S. § 4958(B.1)?

(Appellant's Brief at 4).

Appellant argues the evidence considered in the trial court's sufficiency analysis should have been limited solely to the facts contained in the criminal information. Appellant alleges that, at trial, the Commonwealth based the obstruction charge on both (1) actions preceding June 4, 2016, which resulted in her daughter's recantation letter, and (2) the telephone conversation that occurred at the end of June 2016. Appellant, however, maintains the criminal information contained only facts relating to the events leading to the recantation letter and not the later telephone conversation. Appellant contends the Commonwealth made no request to amend the information to include the telephone call and, in instructing the jury, the trial court described the obstruction charge as it appeared in the criminal information only. Based on evidence relating solely to the facts contained in the criminal information, Appellant asserts the Commonwealth presented insufficient evidence to show Appellant induced her daughter to send the recantation letter. Moreover, even if the additional evidence relating to the telephone call is included, Appellant submits the trial evidence is still insufficient to uphold the obstruction conviction. Appellant concludes this Court should reverse her judgment of sentence and discharge her from further prosecution. We disagree.

Pennsylvania Rule of Criminal Procedure 560 describes the content of a

criminal information and requires "a plain and concise statement of the essential elements of the offense substantially the same as **or cognate to** the offense alleged in the complaint." Pa.R.Crim.P. 560(B)(5) (emphasis added).

> [Informations] must be read in a common sense manner and are not to be construed in an overly technical sense. The purpose of the [information] is to provide the accused with sufficient notice to prepare a defense, and to [ensure] that [s]he will not be tried twice for the same act.

***Commonwealth v. Ohle***, 503 Pa. 566, 588, 470 A.2d 61, 73 (1983) (internal citations and quotation marks omitted). "A criminal information is not constitutionally infirm if it notified the defendant of the crime with which [s]he is charged." ***Commonwealth v. Jones***, 590 Pa. 202, 237, 912 A.2d 268, 289 (2006). Additionally, Rule 560(B)(5) "does not require that the crime charged in the Information be identical to that charged in the Complaint, so long as the charge is [cognate] to the one laid in the Complaint."[2] ***Commonwealth v. Donaldson***, 488 A.2d 639, 640 (Pa.Super. 1985).

"Variations between allegations and proof at trial are not fatal unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right." ***Commonwealth v. Kelly***, 487 Pa. 174, 178, 409 A.2d 21, 23 (1979). ***Accord Ohle, supra*** at 589, 470 A.2d

---

[2] Pennsylvania Rules of Criminal Procedure were amended and Rule 225 was renumbered as Rule 560 in March 2000. The language quoted remained substantially the same.

- 3 -

at 73; **Commonwealth v. Zullinger**, 676 A.2d 687, 689 (Pa.Super. 1996).

Importantly, "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "[I]ssues are preserved when objections are made timely to the error or offense." **Commonwealth v. Baumhammers**, 599 Pa. 1, 23, 960 A.2d 59, 73 (2008), *cert. denied*, 558 U.S. 821, 130 S.Ct. 104, 175 L.Ed.2d 31 (2009). "The purpose of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and, thereby, to conserve limited judicial resources." **Commonwealth v. Sanchez**, 614 Pa. 1, 32, 36 A.3d 24, 42 (2011), *cert. denied*, 568 U.S. 833, 133 S.Ct. 122, 184 L.Ed.2d 58 (2012). "[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." **Commonwealth v. Strunk**, 953 A.2d 577, 579 (Pa.Super. 2008) (quoting **Commonwealth v. Clair**, 458 Pa. 418, 423, 326 A.2d 272, 274 (1974)). **See, e.g., Commonwealth v. Adams**, 39 A.3d 310, 319-20 (Pa.Super. 2012), *affirmed*, 628 Pa. 600, 104 A.3d 511 (2014) (reiterating: "[A] defendant's failure to object to allegedly improper testimony at the appropriate stage…constitutes waiver" and "absence of a contemporaneous objection below constituted a waiver of appellant's claim respecting the prosecutor's closing argument").

Instantly, the record makes clear Appellant did not object at trial either to the admission of the additional facts she now challenges or to the

prosecutor's reference to those facts at closing. (*See* N.T., Trial, 9/11-12/17, at 13-14, 34-35, 44-46, 73-74, 107-08, 117.) Therefore, Appellant waived her "limited facts" issue for appellate review. *See* Pa.R.A.P. 302(a).

Moreover, Appellant's claim merits no relief in any event. The well-reasoned opinion of the Honorable Deborah E. Curcillo fully discusses and properly disposes of the question presented. (*See* Post Sentence Motion Order and Memorandum Opinion, filed January 10, 2018, at 5-8) (finding: trial court can consider **all** evidence presented at trial in reviewing sufficiency of evidence; evidence demonstrated Appellant wrongly communicated with daughter and attempted to impede child abuse investigation; Appellant admitted contact with daughter during investigation and daughter then wrote letter recanting abuse; detective testified daughter later re-asserted abuse allegation once she learned her siblings would not necessarily be placed in foster care; detective testified Appellant directed daughter and grandmother to write recantation letter; Appellant admitted telling grandmother that Appellant was losing her home, kids, job, *etc.* as a result of abuse allegations; Appellant's statements to grandmother indicate attempt to get grandmother and daughter to work against investigation; Commonwealth presented sufficient evidence to sustain conviction). Accordingly, to the extent part of Appellant's sufficiency claim is properly before us, we affirm on the basis of the court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/09/2018

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
: 183 MDA 2018
v. : 3578 CR 2016
:
SAMIRA RANDOLPH-ALI : CRIMINAL APPEAL

## TRIAL COURT STATEMENT IN LIEU OF OPINION
## PURSUANT TO PA.R.A.P. 1925

AND NOW, this 6th day of March, 2016, having received the Notice of Appeal from our

order of January 10, 2018, and a Statement of Errors Complained of on Appeal, and having filed

a Memorandum Opinion on that same date, this Court incorporates by reference our

Memorandum Opinion, which details the facts in this matter, provides our reasons for

concluding that Appellant is not entitled to post-sentence relief, and is the basis of our January

10, 2018 final order denying Appellant's Post-Sentence Motion. Therefore, we will submit

nothing further regarding this matter unless directed by the Superior Court of Pennsylvania.

**Respectfully submitted:**

_____
**Deborah E. Curcillo, Judge**

**Dated:** 3-6-18

*Distribution:*
The Superior Court of Pennsylvania *Cert. mail*
Hon. Deborah E. Curcillo
James Karl, Esq., Dauphin County Public Defender's Office
Ryan Lysaght, Esq., Dauphin County District Attorney's Office

1

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS,
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : NO. 3578 CR 2016
:
SAMIRA RANDOLPH ALI : CRIMINAL MATTER

## POST SENTENCE MOTION ORDER AND MEMORANDUM OPINION

AND NOW, this 10th day of January, 2018, upon consideration of the Post Sentence Motion filed by Samira Randolph Ali, (hereinafter "Defendant") it is HEREBY ORDERED that the Motion is DENIED.

## FINDINGS OF FACT

Defendant was charged with, *inter alia,* obstruction of a child abuse investigation on May 26, 2016. The criminal information was filed July 27, 2016. She proceeded to a jury trial on September 12, 2017, where she was found guilty of obstruction. She was sentenced October 12, 2017, and a timely post sentence motion was filed. Briefs were ordered and timely filed.

On May 5, 2016, Scott Schaeffer, a patrolman with Steelton Police, was dispatched for a runaway juvenile[1]. (Notes of Testimony, Jury Trial Sept 11-12, 2017[2], p. 18-19). While en route to the juvenile's home, he learned that she had arrived at Steelton Police Station. Officer Schaeffer informed her mother, the defendant, that her child was safe at the police station. (N.T. 19-20). He then returned to the police station to interview the minor. The minor was crying and very upset. She indicated that her mother beat her and she did not want to go home. (N.T. 20). Following procedure when child abuse is alleged, Schaeffer called Detective Shaub. (N.T. 21).

---

[1] As the victim was a minor at the time of the incident, we will use the initials "A.R" when referring to the victim.
[2] Hereinafter "N.T."

1

Detective Sergeant William Shaub has been with the Steelton Police Department for about 20 years and a police officer for 29 years. (N.T. 63). His assignment at the time of this incident was to investigate all child neglect, child abuse, child sex and unattended death cases. (N.T. 64). He was called in that night and spoke with A.R. and took her statement. (N.T. 66). He recalled she was extremely upset and appeared to be injured around her left eye. (N.T. 66-67). He took photos of her injuries. (N.T. 70). After a case review with Children & Youth, charges were filed against Defendant on May 25 of that year. (N.T. 70).

At some point in early June he received a copy of a letter from A.R. recanting her story. (N.T. 71-72). He called A.R. and Anita Dean (A.R.'s grandmother and Defendant's mother) to talk about it and explained that if it were true, A.R. could be facing charges. (N.T. 72). After he told her that, A.R. indicated the statement she had previously given was the truth, but that she did not want her siblings in foster care. (N.T. 73). He explained that foster care was a very last resort. (N.T. 73). He then spoke with Ms. Dean who said that A.R. had called Defendant and that she overheard part of the conversation where Defendant told A.R. that she was going to lose the house, her job, everything and asked A.R. to write this letter. (N.T. 73). He then asked Ms. Dean to document he conversation and send him an email. (N.T. 73).

Shaub denied telling A.R. or Ms. Dean that they should not talk to anyone besides him during this call. He denied even knowing who Defendant's attorney was as they had not had a preliminary hearing yet. (N.T. 74). Shaub recalled that the phone conversation with Ms. Dean and A.R. took place on or about June 20 while the letter was dated June 2. (N.T. 76). He believes the email was sent June 28 or 29. (N.T. 76). Shaub recalled that A.R. did not tell him that Defendant told her to write the letter. (N.T. 76). There is no indication in his report that he spoke with A.R. or Ms. Dean on June 20, 2016. (N.T. 78).

2

A.R. testified that on the night in question, she and her mother engaged in a verbal argument. (N.T. 25). She denied that her mother ever hit her, called her names, or was physically abusive in any way. (N.T. 26). She did recall giving a statement to Steelton Police that evening. (N.T. 28). A.R. admitted that she was upset with her mother and wanted to get her mother in trouble with police. (N.T. 29). A.R. testified that at the time of the incident, her mother was recovering from hip surgery and used a cane. (N.T. 36). Her mother was arrested later that month, and on June 2, A.R. moved out of state to her grandmother's house. (N.T. 31).

Thereafter, on June 4, 2016, she wrote a letter to the Dauphin County District Attorney's Office recanting her statement. (N.T. 31). A.R. testified that she gave the police a false statement and wanted to rectify it. (N.T. 32). Her mother never spoke to her about the case, nor instructed her to send the letter. Her grandmother told her to send it to the District Attorney's Office. (N.T. 32). A.R. had the letter notarized to make it look better at the suggestion of her grandmother. (N.T. 33-34).

Ms. Dean also testified. She was aware that her daughter was being investigated for child abuse when A.R. came to live with her because the Defendant was in contact with her to explain. (N.T. 43). Ms. Dean explained that Defendant would call and talk to her and then talk to A.R. who was excited to talk to her mother about the various things going on in her life. (N.T. 43). Eventually, Ms. Dean discovered that Samira and A.R. were not supposed to be in contact so she explained that to A.R. (N.T. 44).

Ms. Dean called Det. Shaub at some point in late June to ask him what her role was and who she should talk to about the case. Per her testimony, he told her not to speak to defense counsel and only to speak to him. (N.T. 44). At some point, she wrote Det. Shaub an email to memorialize the conversation they had. It indicated that Defendant was telling her and A.R. to

3

call and tell the police and district attorney's office that the story was taken out of context. (N.T. 45-46).

Ms. Dean recalled the letter that A.R. sent and indicated that she read it after A.R. composed it. (N.T. 46-47). Ms. Dean did not recall telling A.R. where to send the letter or advising her on drafting the letter at all. (N.T. 47). She did not recall the date of when she called Det. Shaub, but believes it was it was several weeks after A.R. moved in with her as they were going to a bank to open an account for her. (N.T. 49).

Defendant, Samira Randolph-Ali, testified her own behalf. She explained that when her children misbehave she puts then on punishment. This means they lose access to electronic devise such as cell phones and Kindles. (N.T. 95). On the day in question, A.R was on punishment. (N.T. 95). Defendant's middle daughter woke her to say that A.R. had taken some devices back. (N.T. 96). Defendant checked and saw the devices were gone so she confronted A.R. (N.T. 96).

A.R. returned the kindle but not her cell phone. Defendant knew that A.R. often kept her cell phone in her brassiere so she reached out to take it. (N.T. 97). A.R. smacked her hand away. (N.T. 96). Defendant told A.R. not to put her hands on her, and then reached again for the cell phone; this time her attempt to get her phone caused A.R.'s necklace to break which upset A.R. (N.T. 97). A.R. was hysterical and called Defendant names causing Defendant to attempt to strike her, but A.R. blocked her and smacked her hand away. (N.T. 97). Defendant testified that A.R. is much bigger than her and based on her own physical condition, there was no way she could physically discipline her child. (N.T. 97-98). The conversation turned mean and A.R. said she wished Defendant had died in a car accident, while Defendant said she wished she have never had A.R. (N.T. 98). They kept yelling and then A.R. pushed Defendant out of the way and

4

left the house. (N.T. 99). Defendant yelled that if A.R. was not back home by 7:00 p.m. she would call the police. (N.T. 99). A.R. did not return in a timely manner and Defendant did call the police. (N.T. 99). Officer Schaeffer arrived 10 to 15 minutes later and said that A.R. was at the station. (N.T. 99).

Defendant admitted to two telephone calls while A.R. lived in North Carolina, despite the fact that they were not supposed to have contact. (N.T. 101). She testified that A.R. called her to tell her what was going on in her life. (N.T. 101). Specifically, in the second call, A.R. wanted her to know that she had gotten a call back from her Hamilton audition and was thinking about moving home so that if she got the part, she could commute to New York easily. (N.T. 102).

At that point, Defendant said she had to explain to A.R. that since these child abuse allegations were made, they could not live together and really they should not even be talking. (N.T. 102). A.R. grew upset and handed the phone to her grandmother. (N.T. 102). Defendant told her mother about the conversation. She said she had lost her job. She said that the police did not want to listen to A.R. when she sent the letter ten days after she was arrested. (N.T. 102). Defendant vehemently denies ever instructing A.R. to send a letter recanting anything. (N.T. 103).

## CONCLUSIONS OF LAW

The defense argues that the evidence was insufficient to support a conviction for obstruction of a child abuse investigation and that the verdict was against the weight of the evidence.

Inasmuch as Defendant is making a weight of the evidence claim, she concedes the existence of sufficient evidence to sustain the conviction. _Com. v. Lewis_, 911 A.2d 558 (Pa. Super. 2006) (a motion for new trial on the grounds that the verdict was against the weight of the

5

evidence concedes that there is sufficient evidence to sustain the verdict). However, we find it prudent to address the sufficiency of the evidence claim here.

A claim challenging the sufficiency of the evidence is a question of law. _Com v. Widmer_, 744 A.2d 745, 751 (Pa. 2000). "In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all the elements of the offense beyond a reasonable doubt." _Com v. Diamond_, 632 Pa. 475, 486-487, 83 A.3d 119, 126 92013)(citations omitted). See also _Com v. Gonzalez_, 109 A.3d 711, 716 (Pa.Super. 2015).\ (Pa. Super. 1982).

The Commonwealth may establish the requisite elements wholly by circumstantial evidence. _Com v. Fairley_, 444 A.2d 748 (Pa.Super 1982). However, any verdict based wholly on inference and suspicion must be overturned. _Com v. Rambo_, 412 A.2d 535 (Pa. 1985).

Obstruction of a child abuse investigation is defined at 18 Pa.C.S. § 4958. It reads, "a person commits an offense if, with intent to prevent a public servant from investigating or prosecuting a report of child abuse under 23 Pa.C.S. Ch. 63, the person by any scheme or device or in any other manner obstructs, interferes with, impairs, impedes or perverts the investigation or prosecution of child abuse."

First, the defense contends that the information only charged Defendant with obstruction in regards to the action resulting is A.R.'s faxing a letter of recantation. There was no request to amend the information and in the jury charge, this Court only referenced the letter as it was in the information. However, in closing, the Commonwealth argued that the obstruction charge was based on actions preceding the June 4, 2016, letter _and_ the telephone call that occurred at the end

6

of June 2016. However, inasmuch as the information and jury charge relate solely to action that preceded the June 4 letter, the sufficiency analysis must be limited to the description of the alleged crime as set forth in the information and the jury instructions.

We disagree that the analysis must be limited to events prior to June 4, 2016, and instead review all of the evidence presented at trial. In reviewing a sufficiency claim this court may not weigh the evidence and substitute our judgment for the fact finder. *Com v. Lewis*, 911 A.2d 558 (Pa.Super 2006). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

In reviewing all of the evidence, it is clear that Defendant was in communication with her child and was attempting to impede the investigation. Defendant admitted to being in contact with her daughter during the time of the investigation and her daughter wrote a letter recanting her story during that time. Viewing the evidence in the light most favorable to the verdict winner, it is clear that Defendant's communication with her daughter affected A.R.'s decision to cooperate. Further, during the phone call when she explained to A.R. why A.R. could not move home would naturally cause a child to change their story. Det. Shaub recalled A.R. changing her story and then reverting back to the truth once he explained that her siblings were not necessarily going into foster care. He recalls being told that Defendant told her mother and daughter to write the letter. Defendant herself testified that she told her mother everything that was happening to her (losing her home, job, kids) since the allegations were made. Under these circumstances where Defendant's mother was providing a home to her child, Defendant's statements to her mother indicate an attempt to get her mother and daughter to work against the investigation.

7

Defendant's second claim is that the verdict was against the weight of the evidence. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice, for purposes of determining whether to grant a new trial, when the figure of Justice totters on her pedestal or when a verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench. Com. v. Cruz, 919 A.2d 279 (Pa. Super. 2007).

The jury's verdict in no way caused us to lose our breath or feel that Justice had tottered on her pedestal. They jury weighed the credibility of the witnesses, viewed all of the evidence presented at trial and rendered its verdict accordingly.

The defendant is advised that:

1. You have the right to file an appeal within thirty (30) days of the entry of this Order;

2. You have the right to the assistance of counsel in the preparation of your appeal;

3. You have the right, if you are indigent, to appeal in forma pauperis and to proceed with assigned counsel as provided in Pa.R.Crim.P. 521(B).

You have the right, if you are indigent, to appeal in forma pauperis and to proceed with assigned counsel as provided in Pa.R.Crim.P. 122; and,

4. You have a qualified right to bail under Pa.R.Crim.P. 521(B).

**BY THE COURT:**

_Deborah E. Curcillo_
**Deborah E. Curcillo, J.**

*Distribution:*
Hon. Deborah E. Curcillo
Ryan Lysaght, Esq., Dauphin County District Attorney's Office
James Karl, Esq., Dauphin County Public Defender's Office

8