642 A.2d 453

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Anthony REID, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1992.

Decided May 24, 1994.

170

Samuel C. Stretton, West Chester, for appellant.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., Hugh J. Burns, Jr., Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## *OPINION OF THE COURT*

CAPPY, Justice:

We have before us an automatic direct appeal from the Judgment of Sentence of death and consecutive terms of imprisonment imposed upon Appellant, Anthony Reid, by the Court of Common Pleas of Philadelphia County.[1] Sentence was imposed following the jury's verdict that Appellant had, beyond a reasonable doubt, committed murder of the first degree, carried a firearm without a license, and possessed an instrument of crime. On the record before us, we affirm the judgments of sentence imposed by the Court of Common Pleas of Philadelphia County, Criminal Division.

In December 1989, Appellant was initially brought to trial on all of the charges made against him in connection with the death of a young man named Mark Lisby. The jury in that trial found Appellant guilty of criminal conspiracy,[2] but was unable to reach a verdict on the remaining charges. On retrial, Appellant was convicted of murder of the first degree,[3] carrying a firearm without a license,[4] and possessing an instrument of crime.[5] A separate penalty hearing was held regarding the murder conviction. The jury found one aggravating circumstance,[6] and no mitigating circumstances, and fixed Appellant's penalty at death. Appellant was immediately sentenced to death by the trial court,[7] and sentencing on the remaining counts was deferred pending the receipt of post-

1. See, 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 2502(a).

4. 18 Pa.C.S. § 6106.

5. 18 Pa.C.S. § 907.

6. The defendant has a significant history of felony convictions involving the use or threat of violence to the person. 42 Pa.C.S. § 9711(d)(9).

7. 42 Pa.C.S. § 9711(g).

trial motions, which were subsequently filed, argued and denied.

Thereafter, Appellant was sentenced to two and one-half to five years imprisonment on the possession of an instrument of crime count, and two and one-half to five years imprisonment on the carrying a firearm without a license count, both to run consecutive to each other and the sentence of death. In addition, Appellant was sentenced to five to ten years imprisonment on the criminal conspiracy count, consecutive to all other sentences, based upon his conviction of that offense at his earlier trial on December 9, 1989. It is the judgment of sentence imposed for criminal conspiracy at Appellant's first trial, together with the judgments of sentence imposed on retrial of the remaining charges, that are currently before this Court.

As in all cases where we *affirm* the judgment of sentence of death, this Court must conduct an independent review of the sufficiency of the evidence on the charge of murder in the first degree without regard to whether the Appellant has challenged his convictions on that ground. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for establishing sufficiency is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986). The evidence presented by the Commonwealth clearly satisfies this test. A synopsis of the case *sub judice,* as competently described by the trial court, is essentially as follows.

On July 9, 1988, Mark Lisby, the victim, took approximately Five–Hundred Dollars worth of "caps" (cocaine capsules) from his nephew Terrance Lisby. The next day, Mark Lisby informed Terrance Lisby that he had used the "caps" and did

not have the money to pay him. Terrance Lisby worked for Lawrence Boston, and both of these men were attempting to obtain membership in the Junior Black Mafia ("JBM"). Lawrence Boston and Terrance Lisby were working for Kevin Bowman, who was a member of the JBM. Once Mark Lisby realized that Kevin Bowman would be angry about the missing drugs, he met with Kevin Bowman to explain the situation and offered to replace the lost income the following week.

On or about July 11, 1988, Lawrence Boston, who had not been paid, appeared at the doorway of the Lisby household located at 2444 North Stanley Street in Philadelphia. He was accompanied by the Appellant, Anthony "Tone Bey" Reid, who was a member of the JBM. After a brief conversation, Mark Lisby, Appellant and Lawrence Boston left the house and began walking west on Cumberland Street. As the three men approached the intersection of Cumberland Street and 31st Street, Appellant, Anthony Reid, shot Mark Lisby once in the center of his chest, once in the upper right chest just beneath the collar bone, and once in the back of his right leg. Mark Lisby died as a result of these gunshot wounds.

Through appellate counsel, Appellant asserts numerous claims of error and prejudice during his trial. We will address these claims *seriatim.*

First, Appellant claims that the trial court committed a constitutional violation, an error of law, or abused its discretion by precluding Appellant from utilizing county funds to obtain a particular psychologist as a mitigation expert in the penalty phase of his trial.

The record reveals that Appellant was provided with psychological examinations and adjudged competent to stand trial. Upon his conviction of murder in the first degree, he sought to present the testimony of Dr. Gerald Cook during the penalty phase of his trial for purposes of mitigation. Dr. Cook's fee for testifying would have been $1,000. The trial court determined that Appellant did not have a constitutional right to choose a particular psychiatric advocate, and offered Appellant an opportunity to be examined by a neutral court-appointed

psychiatrist. *See Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The trial court had access to other psychiatrists who were employed by the city on contract from Temple University Hospital, and who were available to perform the examination. Appellant refused this offer.

We perceive no constitutional violation, error of law, or abuse of discretion in the trial court's decision in this instance. The trial court did not preclude Appellant from being examined by a psychologist for purposes of mitigation. It merely precluded the excessive use of public funds for Appellant to hire his own particular psychologist. Under these circumstances, Appellant's constitutional rights were not violated, and the interest of an accurate disposition was preserved. *Id.*

Second, Appellant claims that the trial court committed a constitutional violation, an error of law, or abused its discretion by informing the jury, that under the law of this Commonwealth, a minor reaches majority upon attaining the age of 18 years, and that the United States Supreme Court has upheld a sentence of death for defendants as young as age sixteen.

Appellant was twenty years of age when he killed Mark Lisby. The record reveals that Appellant's age was presented to the jury as a mitigating circumstance during the penalty phase in accordance with 42 Pa.C.S. § 9711(e)(4), and that the trial court provided sufficient instructions to the jury concerning its ability to find this particular mitigating circumstance and its duties with regard to mitigating circumstances generally. Nevertheless, Appellant claims that the trial court erred when it further charged the jury concerning the mitigating circumstance of Appellant's age as follows:

Now, the legislature did not tell us, did not spell out when the age will be a deterrent to the death penalty. They leave that to you. All that I can tell you is that one becomes an adult at the age of 18. And all I could further tell you, that our United States Supreme Court has upheld the death penalty in juveniles as young as 16. But that should not guide you necessarily in this case. It is for you to decide

whether a person is too young or too old for imposing the death penalty. That's for you and you alone to decide. . . .

It was brought to my attention that somehow when I speak about age of the Defendant that I am somehow telling you what you are to do about that. I am not telling you what to do about that. It is for you to decide whether this Defendant at the age of 20 is a mitigating factor. Regardless of what the Courts have decided or regardless of when one becomes an adult. It is the same thing when one becomes a senior citizen at 65 or something like that, they say that's when you become a senior citizen. Well, that is for you to decide whether that is a mitigating factor. And only you can decide that. If you decide that 20 is a mitigating factor, you have an absolute right to do that, you could consider that. I was just giving you examples as to what may be when one reaches adulthood, and possibly when one reaches senior status. But that is for you to decide. You decide whether that is important. Okay?

N.T. 1/10/91, pp. 8.90, 8.98.

We conclude that nothing contained in this disputed portion of the trial court's instructions amounts to a constitutional violation, an error of law, or an abuse of discretion by the trial court. The trial court has discretion in phrasing its instructions to the jury, and is not limited to particular language, provided the law is clearly, adequately, and accurately presented to the jury. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990); *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983). The charge with regard to mitigating circumstances, when read as a whole, clearly, adequately, and accurately presented to the jury the law concerning the mitigating circumstance of age. The trial court's discretionary statements with regard to one reaching majority at age 18 and the imposition of the death penalty on persons as young as 16, were neither incorrect nor prejudicial, given the balance of the trial court's instructions, which repeatedly informed the jury that it was their decision to determine if age was a mitigating factor. Thus, this claim is meritless.

■ Third, Appellant claims that the trial court committed a constitutional violation, an error of law, or abused its discretion by permitting the jury to learn of Appellant's two prior criminal homicide convictions and the resultant sentences, for purposes of establishing aggravating circumstances attending the commission of his crimes against Mark Lisby.

■ Appellant killed Mark Lisby on July 12, 1988. He killed two other people in March 1989 and was subsequently convicted on two counts of murder in the first degree. Appellant contends that the evidence of these two other murder convictions and the resultant sentences of life and death was improperly admitted in the case *sub judice*, because the killings that led to those convictions occurred subsequent to the death of Mark Lisby. Thus, he asserts that those convictions did not amount to a "history" at the time he killed Mark Lisby, for purposes of establishing the aggravating circumstance found at 42 Pa.C.S. § 9711(d)(9) (significant history of felony convictions involving the use or threat of violence to the person). Appellant further asserts that even if it was not error for the trial court to permit introduction of his other murder convictions, it was error for the jury to learn of the sentences imposed for those convictions. We do not agree.

An aggravating circumstance may be established pursuant to 42 Pa.C.S. § 9711(d)(9) if "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person." Nothing contained in this provision would lead us to believe that the Legislature intended to limit the scope of prior convictions for purposes of aggravating sentence to only those arising from acts occurring prior to the instant offense. The term "significant history" refers to Appellant's status at the time of sentencing, not at the time he committed the crime for which he is being sentenced. *Commonwealth v. Haag*, 522 Pa. 388, 562 A.2d 289 (1989). The function of the penalty phase is to focus upon the aspects of a defendant's character, which is properly reflected in his prior convictions, regardless of when the acts leading to those convictions occurred. *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984).

At the time of Appellant's penalty hearing in the matter *sub judice,* he stood convicted of two unrelated counts of murder in the first degree. Clearly, this was relevant to Appellant's character, and therefore was properly presented to, and considered as an aggravating circumstance by, the jury when deliberating on Appellant's penalty for killing Mark Lisby. The fact that the jury was informed about the penalties that were imposed for Appellant's other murder convictions does not alter this conclusion. The judgments of sentence flowed naturally from, and formed an integral part of, the convictions presented to support the aggravating circumstance. *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984). Moreover, the record reveals nothing to indicate that the jury regarded Appellant's life as not being in its hands because it was aware of the pre-existing death verdict. Thus, this claim is meritless.[8]

**8.** In a related claim (Appellant's Brief, No. 4), Appellant argues that the use of his two other murder convictions to support the aggravating circumstance found at 42 Pa.C.S. § 9711(d)(9) (significant history of felony convictions involving the use or threat of violence to the person) was also improper because of the existence of an entirely different aggravating circumstance found at 42 Pa.C.S. § 9711(d)(11) (defendant convicted of another murder, committed either before or at the time of the offense at issue). Appellant claims that since aggravating circumstance (d)(11) limits the use of a single murder to one *"committed either before or at the time of the offense at issue,"* aggravating circumstance (d)(9) should be construed to contain a similar limitation where the history of violent felony convictions happens to include murders. This claim ignores the language of these two aggravating circumstances, and the clear applicability of aggravating circumstance (d)(9) as discussed above.

Nevertheless, Appellant contends that the limiting language of aggravating circumstance (d)(11) should apply to the extent that murder convictions comprise a part of his violent history, since the limitation was enacted subsequent to, and is more specific than, the more general provisions of aggravating circumstance (d)(9). We agree that aggravating circumstance (d)(11) is limited to additional murders "committed either before or at the time of the instant offense," which renders it inapplicable to the facts of the matter *sub judice,* since Appellant had not been convicted of a murder "committed either before or at the time of the offense at issue." However, we do not conclude that this limitation, which is designed to support aggravation based upon a *single* murder conviction, can preclude the existence of aggravation based upon a *history* of violent felony convictions, simply because the history may involve a conviction arising from a murder committed after the offense at issue.

■ Fourth, Appellant claims that the trial court committed a constitutional violation, an error of law, or abused its discretion by precluding him from presenting evidence to the jury during the penalty phase that he had converted to and actively practiced the Muslim faith.

The trial court ruled that evidence of religion was not admissible, despite Appellant's claim that such evidence was relevant to the catchall mitigating circumstance found at 42 Pa.C.S. § 9711(e)(8) (any other evidence of mitigation concerning the character and record of the Defendant and the circumstances of his offense). In reaching its decision the trial court relied upon 42 Pa.C.S. § 5902(b) which provides, "No witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility." The trial court further relied upon the fact that Appellant was unable to present any Pennsylvania or Federal authority permitting evidence of religion to be presented in mitigation during a death penalty hearing. Finally, the trial court determined that it would be reversible error to allow the jury to hear evidence concerning Appellant's Muslim religion, because such could bring to the jury a negative connotation and possible prejudice against Appellant.

■ We do not necessarily agree with the trial court that Section 5902(b) governs this situation, since that section is concerned with questions of "competency or credibility." Moreover, moral values held by one who is religious could be relevant to the character of a defendant, and thus, reasonably fall within the mitigating circumstance provided at 42 Pa.C.S.

The Legislature clearly intended to provide for aggravation where, at the time of sentencing, there exists a history of violent felony convictions. To hold that a history of less heinous crimes committed after the offense at issue may support aggravation, but that a history comprised of murder convictions cannot, would be absurd, especially where 42 Pa.C.S. § 9711(d)(9) contains no limitation similar to that contained in 42 Pa.C.S. § 9711(d)(11). See, Commonwealth v. Haag, 522 Pa. 388, 562 A.2d 289 (1989). Accordingly, we hold that the trial court properly admitted the evidence of Appellant's two prior murder convictions to support the existence of that aggravating circumstance found at 42 Pa.C.S. § 9711(d)(9).

§ 9711(e)(8). Nevertheless, we conclude that the trial court's action with regard to Appellant's limited attempt to inform the jury concerning his active practice of the Muslim faith does not amount to reversible error under the circumstances.

Appellant cites to no relevant authority to support his claim, and fails to specifically explain how he could have been prejudiced by the trial court's action in this instance. More importantly, Appellant was able to present evidence about his adherence to a moral philosophy, and that he was involved in a new religion. It was Appellant himself who chose not to further supplement such evidence of character by exploring his alleged reform and change, which could have fostered and evidenced moral values that may have mitigated his crime in the eyes of the jury.

Furthermore, given Appellant's failure to offer further evidence of his alleged reform and change, and any accompanying change in moral values, the trial court's action essentially amounted to only prohibiting Appellant from naming the particular religion he had chosen to practice. As Appellant's argument does not enlighten this Court concerning how informing the jury he was a Muslim would have been to his benefit, we perceive no constitutional violation, error of law, or abuse of discretion by the trial court in this instance.

Fifth, Appellant claims that the Assistant District Attorney committed prosecutorial misconduct during his arguments to the jury, and thus, the trial court committed a constitutional violation, an error of law, or abused its discretion by denying Appellant's motion for a mistrial presented on this basis. In addition, Appellant claims that trial counsel was ineffective for failing to further object on the basis of prosecutorial misconduct.

Appellant contends that the Assistant District Attorney committed misconduct during his penalty phase argument by referring to his own modest upbringing and asking the jury to stop Appellant and realize that the three murders were not mitigated or justified by Appellant's upbringing. Appellant makes further allegations of misconduct based upon numerous

references to statements by the Assistant District Attorney during his arguments to the jury in both trials.[9]

The prosecutor is permitted wide latitude in making argument to the jury. *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991). Guidelines governing the review of allegedly improper remarks made by a prosecutor during argument were set forth in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982).

> The primary guideline in assessing a claim of error of this nature is to determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding, Code of Professional Responsibility (Canon 7 E.C. 7–19—7–39), and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury. Nevertheless, we do require that the contentions advanced must be confined to the evidence and the legitimate inferences to be drawn therefrom. Deliberate attempts to destroy the objectivity and impartiality of the finder of fact so as to cause the verdict to be a product of the emotion rather than reflective judgment will not be tolerated. The verdict must flow from the respective strengths and weaknesses of the evidence presented and not represent a response to inflammatory pleas for either leniency or vengeance.

500 Pa. at 53, 454 A.2d at 956. [citations omitted]. See also, *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991); *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987); *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986); *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986).

With these principles in mind, we have reviewed the entire argument by the Assistant District Attorney in both trials, and

9. Appellant advances these further claims of misconduct through a separate argument (Appellant's Brief, No. 9). We choose to address all of Appellant's claims of prosecutorial misconduct together.

conclude that he did not deliberately seek to destroy the objectivity of the fact finder, and that his argument did not have the "unavoidable effect" of prejudicing the jury, forming in their mind a fixed bias and hostility towards Appellant so that they could not weigh the evidence objectively and render a true verdict. In both proceedings, the argument of the Assistant District Attorney was reasonably based upon the evidence presented at trial and the reasonable inferences therefrom, and merely exhibited a degree of oratorical flair, license and passion that was permissible during his arguments to the jury. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991).

Accordingly, given the absence of prosecutorial misconduct at either trial, the trial court did not commit a constitutional violation, an error of law, or abuse its discretion by denying Appellant's motion for a mistrial presented on this basis. Furthermore, given our finding that the prosecutor did not exceed the bounds of reasonable advocacy during either trial, trial counsel cannot be deemed ineffective for failing to further object on the basis of prosecutorial misconduct. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis,* 491 Pa. 215, 420 A.2d 419 (1980).

Sixth, Appellant claims that the trial court committed a constitutional violation, an error of law, or abused its discretion, in both trials, by permitting the jury to learn of Appellant's association with the JBM. In addition, Appellant claims that defense counsel was ineffective during Appellant's first trial for failing to object to the admission of such evidence.

At trial, Appellant sought to impeach the testimony of the Commonwealth's eyewitness, Morris Dozier, who testified that he had seen Appellant shoot Mark Lisby. Appellant inquired about a prior inconsistent statement, which indicated that Dozier, who had known Appellant for years, could not identify the shooter. In so doing, defense counsel "opened the door" for the Commonwealth to show that the prior statement was the result of threats that Dozier had

182

received from the JBM. Thus, the Assistant District Attorney was simply pursuing a line of questioning that Appellant had begun, and Dozier's apprehension, fueled by fear of the JBM, was effective rebuttal of Appellant's attempt to impeach him. Furthermore, evidence of Appellant's connection with the JBM was admissible to prove motive and conspiracy. *Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236 (1982). The inference from such evidence was that Appellant was a JBM enforcer who killed the victim because he had stolen illegal JBM drugs. Thus, such evidence was entirely relevant and admissible.

Although Appellant complains at length that such evidence was admitted, he offers no legally valid reason for concluding that its admission was error. The probative value of establishing Appellant's association with the JBM outweighed any implication of prior criminal activity, and counsel cannot be ineffective for failing to object to the admission of this evidence. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980). Thus, this claim is meritless.[10]

Seventh, Appellant claims that the trial court committed a constitutional violation, an error of law or abused its discretion by refusing to provide a specific "corrupt source" charge or accomplice instruction concerning witnesses who were not

10. Based upon our disposition of this claim, Appellant's related claim (Appellant's Brief, No. 8) is meritless. The trial Court did not commit a constitutional violation, an error of law, or abuse its discretion by permitting the jury to learn that members of the JBM had harassed and threatened Morris Dozier.

Similarly, Appellant's claim (No. 10) is also meritless. The trial court did not commit a constitutional violation, an error of law, or abuse its discretion by permitting a Commonwealth witness, who had sold drugs for the JBM, to testify on re-direct examination concerning the nature of the JBM and Appellant's association therewith, and the risk to his well-being arising from his testimony, once the witness' credibility was challenged based upon open charges pending against him.

In addition, as the evidence challenged in these two issues was properly admitted, trial counsel cannot be deemed ineffective for failing to object to its admission. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980).

accomplices to the crimes charged, but had unrelated open charges pending.

Pursuant to *Commonwealth v. Bricker*, 525 Pa. 362, 581 A.2d 147 (1990), the trial court gave a "corrupt source" charge with respect to the testimony of Lawrence Boston, based upon the evidence that he was an accomplice in the crimes charged. As there was no evidence that Terrance Lisby, Morris Dozier or Kevin Brown were accomplices in the crimes charged, an accomplice instruction was not required with regard to these witnesses. *Id.* The trial court also instructed the jury concerning its duty to make credibility determinations, and in so doing, clearly explained that any interest or motive of a witness that may color his recollection and testimony could be considered in making such determinations. This instruction clearly, adequately and accurately set forth the law on this point, and Appellant cannot complain that the trial Court did not employ the exact language he requested with regard to the individual interests of Terrance Lisby, Morris Dozier and Kevin Brown. *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990); *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983). Thus, we perceive no constitutional violation, error or law, or abuse of discretion by the trial court in this instance.

Eighth, and despite the filing of a counseled brief, Appellant has deemed it necessary to file a supplemental brief, *pro se*, which advances four additional claims of error raised for the first time before this Court. Appellant's *pro se* claims are improper, and will not be considered by this Court.

In *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993), this Court held that appellants in criminal cases possess no constitutional right to hybrid representation, and thus, any *pro se* briefs that they may file while represented by counsel will not be considered. Specifically, we stated that

by denying appellants in criminal cases hybrid representation and refusing to consider their pro se briefs, Superior Court did not adversely affect their constitutional rights but did, on the other hand, thoughtfully and fairly provide for

the adjudication of criminal appeals. A represented appellant may petition to terminate his representation; he may, acting pursuant to the rules of criminal procedure, proceed on his own behalf. Conversely, he may elect to allow counsel to take his appeal, but, should counsel not prevail, assert counsel's ineffectiveness at a later time and, thus indirectly, assert the claims he would have made on direct appeal. The only thing he may not do is confuse and overburden the court by his own pro se filings of briefs at the same time his counsel is filing briefs on his behalf.

*Id.* at 183–84, 626 A.2d at 1140. Thus, Appellant's *pro se* claims are improper and will not be considered by this Court.[11]

■ Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), we have the duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Upon such review, we find that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We also find that the evidence supports the jury's

11. Appellant's statement of the questions involved provides little insight into the substance of his claims, which are essentially as follows: (1) Trial counsel was ineffective for failing to object to the admission of the former testimony of Lawrence Boston, made under oath and subject to cross-examination at Appellant's first trial, where Lawrence Boston exercised his Fifth Amendment privilege and became unavailable at Appellant's second trial; (2) Trial counsel was ineffective for failing to object to the trial court's instructions to the jury concerning the need to find all elements of the crimes charged, or to the trial court's instruction on voluntary manslaughter; (3) Trial counsel was ineffective for failing to request a cautionary instruction that prior consistent statements are not to be used as substantive evidence; and (4) Appellant's prosecution for an offense punishable by death or life imprisonment without indictment by a grand jury violated the Fifth Amendment to the United States Constitution.

finding of the aggravating circumstance specified in 42 Pa.C.S. § 9711(d)(9) (The defendant has a significant history of felony convictions involving the use or threat of violence to the person).[12]

In addition, we find no excess or disproportionality of the sentence of death when compared to the sentences imposed in similar cases. We emphasize that the statute requires a verdict of death in those instances where the jury finds at least one aggravating circumstance and no mitigating circumstances, 42 Pa.C.S. § 9711(c)(1)(iv). Therefore, all similarly situated defendants receive the same sentence, and thus, the death penalty cannot be considered excessive or disproportionate to the penalty imposed in cases involving these circumstances. Furthermore, upon consideration of the circumstances under which Appellant committed this homicide, together with his character and record, we find no basis upon which to conclude that his sentence is excessive or disproportionate to the penalty imposed in similar cases.

Accordingly, we affirm the Judgment of Sentence of death and consecutive terms of imprisonment imposed upon Appellant, Anthony Reid, by the Court of Common Pleas of Philadelphia County.[13]

Judgments of Sentence affirmed.

NIX, C.J., did not participate in the consideration or decision of this case.

LARSEN, J., did not participate in the decision of this case.

FLAHERTY, J., files a concurring opinion.

MONTEMURO, Senior Justice, was an appointed Justice of

12. The record clearly establishes that at the time of the trial herein Appellant had been convicted of murder in the first degree for the shooting death of one Neil Wilkerson, murder in the first degree for the shooting death of one Michael Waters, and criminal conspiracy to commit the murder of Mark Lisby.

13. The Prothonotary of the Supreme Court is directed to transmit the complete record of the case *sub judice* to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

the Court at the time of argument.*

FLAHERTY, Justice, concurring.

I concur in the result reached by the majority, but disavow the implication that 42 Pa.C.S. § 5902(b) does not apply to the circumstances here presented. The moral values which one might possess are one thing, but references to religious belief or religious affiliation are quite another. In this regard the trial judge was correct in my view. Founded by William Penn, the very name of this state is shouted as a symbol of religious freedom and separation of church and state. I fear opening the door to the evils which flow from it being otherwise.