J-S49033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: K.M.N. & G.W.N., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.N. & R.N. | No. 413 MDA 2015 |

Appeal from the Decree entered January 27, 2015,
in the Court of Common Pleas of Lancaster County, Orphans'
Court, at No(s): 1731 of 2014, 1732 of 2014

BEFORE:  BENDER, P.J.E., ALLEN, and OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 21, 2015**

N.N. ("Mother") and R.N. ("Father") appeal from the decree entered on January 27, 2015, which granted the petition filed by the Lancaster County Children and Youth Social Service Agency ("Agency") seeking to involuntarily terminate the parental rights of Mother and Father to their children, G.W.N., a boy born in June of 2006, and K.M.N., a girl born in July of 2004.  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows:

> [… Mother] and [Father] are the parents of four children, namely – [R.M.N.] and his twin, [R.L.N.], both born [in January of 1998], [G.W.N.] ..., and [K.M.N.]. . . .  On July 13, 2011, the ... Agency received a report that [R.M.N.] had had sexual contact with [K.M.N.] while he was babysitting. An investigation was conducted by the regional office of the Office of Children, Youth and Families (CY&F).  (N.T. 11/10/14, 14)[1]  The case was unfounded.  Another referral was received on May 22, 2012.  CY&F again investigated allegations of sexual abuse of [K.M.N.] by the two older brothers[,] and[,] this time[,] [R.L.N.] was indicated for sexual abuse of both [G.W.N.] and [K.M.N.].  CY&F told the parents that [R.L.N.] was not permitted to be with the other

children unsupervised. (*Id*[*.]* at 16) The next report, received on May 28, 2013, informed the Agency that [Mother] was overwhelmed by care of the four children, and that [R.L.N.] was acting out at school by hallucinating and was threatening to kill other students. Additional reports in May described [R.M.N.] and [R.L.N.] as being sexually active with each other and [R.M.N.] setting up fake dating sites, sexting and looking at pornography. (*Id.* [a]t 17) Mother denied that any sexual activity was occurring[,] and informed the Agency that she supervised the children[,] and that they were not left alone. The Agency determined by way of a telephone call to the [] home by a caseworker that all four children were home alone. (*Id.* at 19) On July 26, 2013, Mother called the Agency and told them that[,] when she walked in on the children watching a movie in the living room[,] they told her that [R.M.N.] was "doing stuff to [K.M.N."]. He had asked [K.M.N.] to touch his genitals, which she did. (*Id.* at 20) The Agency filed a petition for temporary custody on July 26, 2013, the children were removed from the home[,] and custody was given to the Agency after a shelter care hearing on July 29, 2013. After their placement, [K.M.N.] and [G.W.N.] described ongoing sexual activity between the children, as well as physical mistreatment by Mother. (*Id.* at 22) A forensic interview was performed and recorded on videotape at the Lancaster Children's Alliance. In the interview, which was shown in court, both children described the sexual abuse and said that they had informed Mother about it on more than one occasion, but that she had not taken any action to stop the abuse.

The parents' visitation with [K.M.N.] and [G.W.N.] was stopped on September 5, 2013, because of inappropriate behavior by [the] parents during visits.

After the Shelter Care hearing on July 29, 2013[,] approximately twenty hearings were held, many of which consisted mainly of repetitious argument by [A]ppellant[s'] counsel on the irrelevant issues contained in [A]ppellant[s'] [Rule] 1925(b) statement; there were also an unusually large number of continuances; most, if not all, were at the request of Mother and Father. The final adjudication and disposition hearing was held on June 26, 2014[,] after which the [trial court] found the children to be dependent

and abused. The final order was issued by the [trial court] on June 26, 2014. [R.M.N.] and [R.L.N.] were found to be perpetrators of sexual abuse.[2] The parents were found to be perpetrators of abuse by omission. The [trial court] found aggravated circumstances relative to both parents. No reunification plan was provided. Neither parent appealed the adjudication or disposition to the appellate court.

On August 25, 2014, the Agency filed a petition to terminate the parental rights of Mother and Father to [K.M.N.] and [G.W.N.]. A Preliminary Decree was issued on August 27, 2014[,] scheduling a hearing for September 22, 2014. Father did not appear at that hearing. After Mother's counsel objected to the form of service on Father[,] the [trial court] held that service on Father was appropriate, since Father's petition had been served on Mother, an adult individual, at Father's residence, pursuant to [Pennsylvania] Rule of Civil Procedure 402(a)(2). The matter was continued and rescheduled to November 10, 2014. (N.T. 9/22/2014) On November 10, 2014[,] the Agency presented a petition to incorporate the Juvenile Court proceedings into the termination proceedings[,] and the [trial court] issued an order to that effect on November 13, 2014, which order also continued the matter to January 5, 2015, because testimony was not completed on November 10. On January 5, 2015, Mother and her counsel appeared at the scheduled hearing to ask for a continuance because Father was in another state helping an emancipated son of the parties. Neither the Agency nor [the court appointed guardian *ad litem*] objected to the request for continuance. Another hearing date had already been set for January 26, 2015.

On January 26, 2015, Father again did not appear. Neither did Mother's counsel, who had telephoned earlier and had faxed a letter to request a continuance and to inform the judge that she lived in an out-of-county area where there was snow predicted[,] and she would not be able to reach the courthouse. Mother read the letter into the record at the hearing that afternoon. The continuance was refused after the court inquired into local weather predictions and the status of all of the courthouses in counsel's area; all courthouses were open and functioning. All other necessary individuals appeared at the hearing. Mother attended the

hearing, explaining Father's absence by again contending that Father had not been properly served with notice. After reviewing the service procedure and hearing testimony from the process server, the [trial court] decided that service had been appropriate. (N.T. 1/26/15 *et seq.*) Mother's counsel never arrived and Mother represented herself. She cross-examined Agency witnesses, but specifically declined the opportunity to testify or to present witnesses on her own behalf. A Final Decree terminating both Father's and Mother's parental rights to [G.W.N.] and [K.M.N.] was issued on January 27, 201[5].

On February 26, 2015, Mother filed an appeal *pro se* from the Final Decree, although she still had a lawyer of record. She included Father as an appellant in the appeal, but nowhere in the document did Father or his attorney acknowledge his participation through placement of their signatures, and [the trial c]ourt ha[d] been informed that Father was[,] therefore[,] not considered to be an appellant by the Superior Court. When Mother filed her [Pa.R.A.P.] 1925(a)(2)(i) statement [on March 20, 2015], she attached a cover sheet titled "Amended Notice of Appeal for Involuntary Termination of Parental Rights and Concise Statement of Errors." This document contained both Mother's and Father's signatures. [The trial c]ourt ha[d] no current information as to whether this second filing w[ould] serve to reinstate Father as an [a]ppellant, but believe[d] that it ma[de] no difference to the processing of [its] opinion, since all of the arguments [...wer]e relevant to Father as well as to Mother.[3]

A [Rule] 1925(a)(2)(i) concise statement of errors complained [of] on appeal, which should have accompanied the appeal, was not filed by Appellant[s] until March 20, 2015, although no extension of time was provided. None of the twenty-four "errors" listed are [sic] relevant to the termination hearing, but complain mainly about the adjudication hearing, which was not appealed by Appellant[s] after that order was issued on June 26, 2014. In any event, Appellant[s'] issues are flawed in various ways, such as not being supported by the record, by being based on hearsay outside of the record, by stemming from the Appellant[s'] lack of understanding of the juvenile statute and the rules of evidence and civil procedure, by

- 4 -

claims of duress and coercion, by claims that are inconsistent with what is properly on the record, by claims relevant only to the child support order, and by assertions that constitute personal invective directed against the court, the [A]gency[,] and other Lancaster County officers and personnel. Because of this, the [c]ourt finds it impossible to deal with what [A]ppellant[s] deem[] to be the operative issues, but presents this opinion on the issues as it sees it[,] and the reasoning behind its decision in this case.

_____

[1] CY&F did the investigation because the Agency already had a relationship with the family because the children were adopted.

[2] [R.M.N.] and [R.L.N.] were indicated as perpetrators of sexual abuse against [K.M.N.] and [G.W.N.]. [R.M.N.] was criminally charged[,] and pleaded guilty in a delinquency action. [R.L.N.] was not charged because of his low-functioning disability.

[3] Father did not appear at the termination hearings, blaming his absence on what Mother mistakenly asserted was defective service of the hearing notice. He and Mother had the same attorney for the juvenile dependency matter[,] and thereby share the problems, procedure[,] and demands made during that case.

Trial Court Opinion, 3/27/2015, at 1-6 (footnotes in original).

On appeal, Mother and Father raise the following issues:

1. Whether the lower court erred in finding that R.N. [Father] was properly served prior to the September 22, 2014 initial involuntary termination proceeding?

2. Whether the lower court erred in proceeding without N.N. [Mother] and R.N.'s [Father's] counsel on January 26, 2015 termination proceeding?

Brief for Mother and Father at 4. The issues do not challenge the sufficiency of the evidence with regard to the termination, only the propriety of the

service on Father, and proceeding without Mother's counsel, who had requested a continuance of the hearing on January 26, 2015.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

First, we find that Father is not a proper party to this appeal. On February 26, 2015, Mother, acting *pro se*, filed the original notice of appeal in the trial court, purportedly on behalf of Father and herself. The original notice of appeal was signed by Mother, but included the names of both Mother and Father. The original notice of appeal did not serve to preserve Father's appeal from the order entered on January 27, 2015. Mother, a non-attorney, could not include him in a notice of appeal that only she signed. *See Spirit of the Avenger Ministries v. Commonwealth*, 767 A.2d 1130 (Pa. Cmwlth. 2001) (holding that non-attorneys may not represent parties before the Pennsylvania courts). Moreover, although both Mother and Father signed the amended notice of appeal, which they filed on March 20, 2015, acting *pro se*, the amended notice of appeal was untimely with respect to Father. *See* Pa.R.A.P. 903(a) (providing that a notice of appeal, generally, must be filed within 30 days after the entry of the order from which the appeal is taken).

Second, Mother's *pro se* documents are not properly before this Court. At the time when she filed both the original notice of appeal on February 26, 2015, and the amended notice of appeal with her concise statement on March 20, 2015, Mother was represented by privately-retained counsel,

Attorney Carol Herring.[1]  Subsequently, on March 23, 2015, Attorney Herring

filed a praecipe to withdraw her appearance as counsel in the matter.

On April 30, 2015, new counsel purportedly representing both Mother

and Father, Attorney Michael E. McHale, filed a first request for an extension

of time to file a brief on behalf of Mother and Father.  Attorney McHale did

not file an amended notice of appeal and concise statement of errors

complained of on appeal, however.  This Court granted the extension of time

until May 15, 2015.  On May 18, 2015, Attorney McHale filed with this Court

a second request for an extension of time to file a brief on behalf of Mother

and Father.  This Court granted the extension until May 29, 2015, and

indicated that no further extensions would be granted.  Attorney McHale filed

the brief and reproduced record on behalf of Mother and Father on June 4,

2015.  On June 22, 2015, CYF and the guardian *ad litem* filed a joint request

for an extension of time to file their respective briefs.  This Court granted

---

[1] Mother failed to file a concise statement of errors complained of on appeal file along with her original notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  We will not find Mother's appeal defective because of her late filing of her concise statement as neither the trial court nor this court entered an order directing her to file the concise statement, and no party is prejudiced by the late filing of the statement.  **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009), in which we addressed a late-filed concise statement and Pa.R.A.P. 905(a)(2), and observed that there is no *per se* rule mandating quashal or dismissal of a defective notice of appeal in children's fast track cases, *i.e.*, when the concise statement does not accompany the notice of appeal, and no party is prejudiced thereby.  **Cf. J.P. v. S.P.**, 991 A.2d 904 (Pa. Super. 2010) (holding that mother waived her issues on appeal by failing to file a concise statement in compliance with a trial court order); **J.M.R. v. J.M.**, 1 A.3d 902, 907 (Pa. Super. 2010) (holding, prospectively, that an appellant waives his issues on appeal by failing to file a concise statement in compliance with an order of this Court).

the extension until June 30, 2015. The guardian *ad litem* filed her brief on July 2, 2015.

Our Supreme Court held in ***Commonwealth v. Ellis***, 534 Pa. 176, 626 A.2d 1137, 1139 (1993) ("***Ellis II***") that there is no right to hybrid representation either at trial or on appeal. ***See also Commonwealth v. Jette***, 611 Pa. 166, 173, 23 A.3d 1032, 1036 (2011) *quoting* ***Commonwealth v. Reid***, 537 Pa. 167, 642 A.2d 453, 462 (1994), *cert. denied*, 513 U.S. 904, 115 S.Ct. 268, 130 L.Ed.2d 186 (1994). Moreover, even if this Court were to accept Mother's notice of appeal, amended notice of appeal, and concise statement as valid and not a legal nullity under the rule against hybrid representation, we would find that the issues raised in Mother's counseled brief on appeal were not presented in her concise statement. Thus, Mother waived all issues on appeal in any event. ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

Regardless, if the issues in the brief filed by Attorney McHale were properly before this Court, we would find that they lack merit. Attorney McHale argues on behalf of Mother and Father that the trial court violated his clients' constitutional rights by failing to provide proper notice to Father, and by refusing the request of their trial counsel for a continuance and

proceeding in her absence. Father did not attend the scheduled hearings on September 22, 2014, November 10, 2014, or January 5, 2015. The matter was continued three times. At the commencement of the hearing on January 26, 2015, the trial court heard the request of the parents' trial counsel, presented by Mother, for a continuance based on the weather, and on Mother's representation that Father lacked proper notice of the hearing. N.T., 1/26/2015, at 4-7. The Agency opposed the continuance. *Id.* at 7.

"It is well settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court." *Commonwealth v. Prysock*, 972 A.2d 539, 541 (Pa. Super. 2009) (citation omitted). "Further a trial court's decision to deny a request for a continuance will be reversed only upon a showing of an abuse of discretion." *Id.* As we have consistently stated, an abuse of discretion is not merely an error judgment. *Id.* Rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Id.*

Here, Father contends that he was not given proper notice of January 26, 2015 hearing. "At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, **by personal service** or by registered mail to his or their last known address or by such other means as the court may require." 23

Pa.C.S.A. § 2513(b) (emphasis added). This Court has previously determined that personal service is effectuated by "handing copies" of the "notice of the hearing to terminate their parental rights" to the parents. *In re K.B.*, 763 A.2d 436, 440 (Pa. Super. 2000). In this case, Lisa Dale, a paralegal with Temp Design Resources contracted to the Agency, testified that she personally served Father with notice of the termination proceeding at the courthouse following his appearance at another hearing for support on January 12, 2015. N.T., 1/26/2015, at 63-64. Ms. Dale testified that she placed the notice "into [Father's] right arm." *Id.* at 63. Father "dropped it on the floor." *Id.* at 68. Additionally, the January 26, 2015 hearing was the fourth time that Father failed to appear for a termination hearing in this matter claiming deficient notice. As the foregoing demonstrates, Father was served personally with notice of the termination proceeding. Thus, having been properly served, we discern the trial court did not abuse its discretion in denying a continuance based on Father's alleged lack of notice.

The trial court found that the serial continuance request based on the prevailing weather conditions in the area had no merit. Mother's counsel claimed inclement weather necessitated another continuance, although Mother was present, and an Agency witness traveled from a distance further east than Attorney Herring's location. N.T., 1/26/2015, at 7. The court noted the fact that the local courthouses were open for business, and that the matter had been scheduled for a long time. N.T., 1/26/2015, at 8-10.

- 11 -

The trial court then proceeded with the termination hearing, with Mother representing herself, and Father absent from the hearing. Based upon the foregoing, the trial court did not abuse its discretion in denying a continuance because of weather.

Furthermore, as we stated in *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010), a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

In its opinion, the trial court considered the children's permanency in their present foster home, as follows:

> [G.W.N.] and [K.M.N.] are currently together in the same permanent resource home, where they were placed on June 13, 2014. They have a close and loving relationship with the parents and siblings of the family. They were provided with counseling for sexual assault[,] and are now involved in trauma-focused counseling with their resource family. (N.T. 1/26/15, p. 39) The Court Appointed Special Advocate (CASA) for [K.M.N.] and [G.W.N.], who has spoken with the children on numerous occasions, told the court that the children were loving and happy in their current home. (*Id.* at 78 et seq. [sic]) She testified that [K.M.N.] told her, "I want to be here forever," and that [G.W.N.] said, "I never, ever want to go back to my other home. I love it here. I want to be here." (*Id*[.] at 81)

Trial Court Opinion, 3/27/2015, at 4-5.

We would find no abuse of the trial court's discretion in refusing to cause the children to suffer more delay in their permanency while their parents and their trial counsel sought serial continuances of the termination hearing. We, therefore, affirm the decree of the trial court.

Decree affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 8/21/2015