J-S38038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT SHANNON CHRISTIE | : | |
| | : | |
| Appellant | : | No. 1386 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 23, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000278-2023

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 30, 2025**

Appellant, Robert Shannon Christie, appeals *nunc pro tunc* from the aggregate judgment of sentence of life imprisonment, without the possibility of parole, imposed after a jury convicted him of first-degree murder and related offenses. On appeal, Appellant argues that the trial court erred by allowing the Commonwealth to admit prior bad acts evidence that should have been precluded under Pa.R.E. 404(b). After careful review, we affirm.

The trial court summarized the facts and procedural history of Appellant's case, as follows:

> The incident underlying Appellant's convictions began on the evening of January 18, 2020. Appellant, Joshua Mcrae (hereinafter "Victim"), Taurien Corbin (hereinafter "Mr. Corbin"), and Jerry Robinson (hereinafter "Mr. Robinson") were partying together, drinking alcoholic beverages, and visiting different bars into the early morning hours of January 19, 2020. Appellant was a high-ranking member of the "Bloods" gang, Victim was new to the organization, and both Mr. Corbin and Mr. Robinson were

trying to dissociate from their former participation as gang members. Throughout the evening, Appellant and Victim had been snipping and bickering at each other—an act of disrespect Appellant could not tolerate. When they left Bills' Stadium Bar in Bristol, Bucks County, Pennsylvania, to return home to Trenton, New Jersey, Mr. Corbin was driving the group in a Toyota Highlander, Appellant was in the front passenger seat, and Mr. Robinson and Victim were in the back seats. Victim continued to verbally disrespect Appellant and when Appellant accused him of not being gangster enough, Victim said, "What you mean I ain't gangster? What if I shoot all y'all in the back of the heads now? What would you do then?" This proved to be too far for Appellant, and Appellant commanded Mr. Corbin to hand him a gun that was in the center console. When Mr. Corbin did not immediately comply, Appellant again commanded, "[P]ass me the fucking gun, Redd [Mr. Corbin's street name]." After Mr. Corbin passed Appellant the gun, he immediately turned around [and] shot Victim five times.

Mr. Corbin slammed on the brakes and pulled the vehicle over to the shoulder of the road. Appellant got out of the car and pulled Victim's body from the rear passenger door and attempted to fire another gunshot while standing over him, but the chamber was empty. Appellant then demanded a second gun, which did not exist, before deciding to leave Victim's body on the shoulder of the road and directing Mr. Corbin to speed away. Appellant instructed Mr. Corbin to drive to a gas station so that Appellant could purchase motor oil to use to set the vehicle on fire. Mr. Corbin and Mr. Robinson remained inside the vehicle while Appellant purchased the motor oil, then Appellant instructed Mr. Corbin to drive to an alley near Trenton High School where Appellant believed there were no surveillance cameras. All three men exited the vehicle[,] and Appellant began to wipe fingerprints from the interior while pouring motor oil over as much of the vehicle as possible. Appellant then used matches to light the car on fire and all three men left the scene.

After a thorough investigation, which included wire-tapping and recorded conversations between Commonwealth witnesses and Appellant, Appellant was charged with criminal homicide, conspiracy to commit criminal homicide, two counts of unlawful possession of a firearm, flight to avoid apprehension, destruction of evidence, two counts of possession of an instrument of a crime

[(PIC)], tampering with physical evidence, and abuse of [a] corpse.[1]

On June 22, 2023, Appellant filed several pre-trial motions, including, in relevant part, motions to preclude reference to Appellant's affiliation with the "Bloods" street gang, reference to Appellant's personal communications intercepted by the Commonwealth wherein Appellant discusses gang activity, and reference to Appellant's violent history by Commonwealth witnesses [Mr.] Corbin and [Mr.] Robinson[,] as well as a motion to suppress Appellant's cell phone records. After a hearing, this court issued an order denying those particular motions on August 24, 2023.

On October 6, 2023, after a five-day jury trial, Appellant was found guilty of [first-degree murder], flight to avoid apprehension, destruction of evidence, [PIC], and abuse of corpse[,] and not guilty of tampering with evidence. The second count of [PIC] was withdrawn by the Commonwealth and this court granted Appellant's motion for demurrer [on the charge] of conspiracy to commit criminal homicide and the Commonwealth's request to *nol pros* both counts of unlawful possession of a firearm. On January 23, 2024, this court sentenced Appellant to life imprisonment, a mandatory sentence, on the [first-degree murder conviction,] as well as to a consecutive term of imprisonment in a state correctional institution for no less than 12 months to no more than 60 months[,] as well as to a five-year term of probation to be supervised by the Commonwealth.

On February 23, 2024, Appellant filed [a] notice of appeal to the Superior Court of Pennsylvania.

Trial Court Opinion (TCO), 6/27/25, at 2-3 (unnecessary capitalization, citations to the record, and footnotes omitted).

Appellant's initial appeal to this Court was quashed on August 23, 2024, on the basis that it was untimely filed. *See Commonwealth v. Christie*, No. 588 EDA 202, order quashing appeal (Pa. Super. filed Aug. 23, 2024).

_____

[1] *See* 18 Pa.C.S. §§ 2501(a) and 2502(a); 903; 6105(a)(1); 5126(a); 5105(a)(3); 907(a); 4910(1); and 5510, respectively.

Appellant thereafter filed a timely petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, alleging the ineffectiveness of his appellate counsel and seeking the restoration of his direct appeal rights *nunc pro tunc*. On May 21, 2025, the PCRA court granted Appellant's petition and he filed his *nunc pro tunc* notice of appeal on May 28, 2025. He and the court thereafter complied with Pa.R.A.P. 1925.

Herein, Appellant states one issue for our review:

1. Did the trial court err by incorrectly permitting impermissible [Rule] 404(b) evidence during trial, specifically:

   a. Reference to Appellant's affiliation with the Nine Trey Gangsters, a "Bloods" street gang, unrelated to the instant case; [and]

   b. Reference to Appellant's personal communications wherein Appellant discusse[d] violence, killings, guns[,] and gang activity, unrelated to the instant case[.]

Appellant's Brief at 8 (unnecessary capitalization omitted).

Initially, our Supreme Court has explained that,

[t]he trial court's decision to admit evidence is subject to review for an abuse of discretion. ***Commonwealth v. Dengler***, … 890 A.2d 372, 379 ([Pa.] 2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Commonwealth v. Dillon***, … 925 A.2d 131, 136 ([Pa.] 2007); ***Grady v. Frito–Lay, Inc.***, … 839 A.2d 1038, 1046 ([Pa.] 2003).

Evidence of "other crimes, wrongs, or acts" is inadmissible solely to show a defendant's bad character or his propensity for committing criminal acts. Pa.R.E. 404(b)(1); ***Commonwealth v. Lark***, … 543 A.2d 491 ([Pa.] 1988). Such evidence is admissible, however, when relevant for another purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or

- 4 -

absence of mistake. Pa.R.E. 404(b)(2); ***Commonwealth v. Chmiel***, … 889 A.2d 501, 534 ([Pa.] 2005). This Court has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell "the complete story." ***Commonwealth v. Williams***, … 896 A.2d 523, 539 ([Pa.] 2006); ***Commonwealth v. Paddy***, … 800 A.2d 294, 308 ([Pa.] 2002); ***Lark***, 543 A.2d at 497. Such evidence may be admitted, however, "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

***Commonwealth v. Hairston***, 84 A.3d 657, 664–65 (Pa. 2014).

Here, Appellant first argues that the trial court erred by permitting the

Commonwealth to elicit the following testimony from Mr. Corbin:

[The Commonwealth:] … [H]ad you and [Appellant] been affiliated with any group or organization?

[Mr. Corbin:] Yes.

[The Commonwealth:] Can you tell the members of the jury what group or organization both you and [Appellant] were in?

[Mr. Corbin:] The Bloods.

\*\*\*

[The Commonwealth:] Was it any specific [sect] or subunit of the Bloods?

[Mr. Corbin:] We were the Nine Three.

[The Commonwealth:] Is there any other term you use for that, like Nine Trey?

[Mr. Corbin:] Yes. There's a lot of different terms that are used.

[The Commonwealth:] Who was higher ranking in the Nine Treys, you or [Appellant]?

[Mr. Corbin:] [Appellant].

[The Commonwealth:] Would his rank in the Bloods have any special status or name or initials?

[Mr. Corbin:] Yeah. OG, Triple OG.

\*\*\*

[The Commonwealth:] And the OG stands for what?

[Mr. Corbin:] Original gangster.

\*\*\*

[The Commonwealth:] Are you anxious today, Mr. Corbin?

[Mr. Corbin:] Yeah, a lot.

[The Commonwealth:] Does some of your anxiety have to do with [Appellant's] membership in that organization?

[Mr. Corbin:] More or less.

N.T. Trial, 10/4/23, at 8-9.

Appellant also objects to the following testimony by Mr. Robinson:

[The Commonwealth:] … Do you know if [Appellant, the victim,] and Mr. Corbin belong to an organization or a group in Trenton?

[Mr. Robinson:] Yes. Do I know? Yes.

[The Commonwealth:] What group do they belong to?

[Mr. Robinson:] From my knowledge, a gang.

[The Commonwealth:] What was the name of the gang they belonged to?

[Mr. Robinson:] Nine Trey.

[The Commonwealth:] Nine Trey Gangsters?

[Mr. Robinson:] Yes.

[The Commonwealth:] And is that a [sect] of a specific larger national gang?

[Mr. Robinson:] Yes.

[The Commonwealth:] Bloods?

[Mr. Robinson:] Yes.

*Id.* at 103.

- 6 -

Additionally, Appellant contends that it was improper for the trial court to allow the Commonwealth to introduce, during Mr. Robinson's testimony, an audio recording of Appellant's stating, "My strap is in the car, never leave home without it. 20 shots, bitch[,]" after which Mr. Robinson explained that by "strap," Appellant meant a gun. Appellant's Brief at 17 (quoting N.T. Hearing, 7/6/23, at 97 (reciting language from the audio recording)); *see also* N.T. Trial, 10/4/23, at 148 (Mr. Robinson's being asked what the word "strap" means and responding, "Gun. Firearm.").

In arguing why the above testimony was improperly admitted under Rule 404(b), Appellant's entire argument consists of the following two paragraphs:

> This evidence was produced by the Commonwealth to demonstrate that … Appellant is a dangerous person who is capable of hurting people with whom he associates. This evidence was not elicited to prove any element of any offenses with which … Appellant was charged.
>
> Although prior bad acts may be admissible, in a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. The trial court's decision to admit evidence is subject to review for an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. … *Hairston*, … 84 A.3d [at] 661….

Appellant's Brief at 18.

Initially, the Commonwealth contends that Appellant has waived his challenge to the admission of the at-issue evidence, as he "makes no effort to meaningfully discuss any pertinent cases or distinguish the cases on which the

- 7 -

trial court relied in its Rule 1925([a]) statement, despite his burden of persuading this Honorable Court that the trial court's ruling was in error." Commonwealth's Brief at 13 (citing **Commonwealth v. Miner**, 44 A.3d 684, 688 (Pa. Super. 2012) ("It is an appellant's burden to persuade [this Court] that the [trial] court erred and that relief is due.")).  As the Commonwealth points out, "[t]his Court has not hesitated to hold that when a party 'cites no pertinent authority to substantiate [his] claim[,] … [the] appellant's issue is waived.'" **Id.** at 14 (quoting **Commonwealth v. Pi Delta Psi, Inc.**, 211 A.3d 875, 883 (Pa. Super. 2019), *appeal denied*, 221 A.3d 644 (Pa. 2019) ("When a party cites no pertinent authority to substantiate its claim[, the] appellant's issue is waived.") (internal quotation marks omitted)).

We agree.  It is well-settled that,

[w]hen briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities.  Citations to authorities must articulate the principles for which they are cited.

This Court will not act as counsel and will not develop arguments on behalf of an appellant.  Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

**Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted).

Here, Appellant's argument is not meaningfully developed.  He fails to address the trial court's rationale, discussed *infra*, for admitting the at-issue

- 8 -

evidence, or offer any explanation for why the probative value of the evidence was outweighed by its prejudicial impact. Consequently, we conclude that he has waived his issue for our review.

Nevertheless, even if not waived, we would discern no abuse of discretion in the trial court's decision to admit the at-issue evidence. First, regarding Appellant's membership in a gang, the court explained its decision to admit this evidence, as follows:

> [S]ubject to the balancing test of Rule 404(b)(2), evidence of a defendant's other acts can be admitted if it is relevant for another purpose, including motive and the "*res gestae* exception." [*Lark*, 543 A.2d at 497.] A jury is presumed to follow instructions to consider evidence of a defendant's "other act" only for one of these limited purposes. *E.g.*, *Commonwealth v. Arrington*, 86 A.3d 831, 845 n.[]11 (Pa. 2014) (citing *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001)).
>
> Pennsylvania courts have previously addressed admissibility of the "other act" of being a gang member. Gang membership is relevant to prove motive to kill, such as killing a member of a rival gang. *Commonwealth v. Gwaltney*, 442 A.2d 236, 241 (Pa. 1982)[] (citing *Commonwealth v. Faison*, 264 A.2d 394 (Pa. 1970)); *Commonwealth v. Blackwell*, 363 A.2d 1316, 1317 (Pa. Super. 1976). However, such evidence of motive is not limited to cases where the victim was in a rival gang. For example, when a non-gang victim stole drugs from a prospective gang member, a defendant's gang membership was relevant evidence of his motive for killing the victim as a gang enforcer. *Commonwealth v. Reid*, 642 A.2d 453, 461 (Pa. 1994). As another example, a defendant's gang membership was relevant to explain his participation in shooting at a non-gang member who had sold fake drugs to a gang member's girlfriend. *Commonwealth v. Wilson*, No. 1470 EDA 2019, 2020 WL 2315616, at 5-7 (Pa. Super. May 11, 2020) (unpublished

memorandum).[2]  Notably, the relevance of gang membership is not limited to proof of a criminal conspiracy, which is a separate purpose than proof of motive to kill.  **See Gwaltney**, 442 A.2d at 241 (describing these purposes as two reasons evidence of gang membership was properly admitted at trial).

In the case at bar, Appellant's gang membership was relevant as evidence of his motive for killing [the v]ictim.  [The v]ictim was disrespectful of Appellant, a prominent "Bloods" gang member, and Appellant could not endure that level of disrespect without losing credibility and respect from subordinate gang members. Additionally, Appellant's communications and his prior violent history were relevant to show that not only was Appellant a gang member, but also that he held himself out to be an active member and would not hesitate to commit crimes and acts of violence to maintain his status in the gang.  This evidence also helped the jury to understand why Commonwealth witnesses Mr. Corbin and Mr. Robinson were so terrified of Appellant and helped explain their behavior prior to trial[,] including the fact that neither of them were forthcoming with information,[3] the fact that Mr. Corbin complied when Appellant demanded the gun, and the fact that both men helped to burn the vehicle.  This [c]ourt is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged."  **Lark**, 543 A.2d at 501.  While this evidence is admittedly prejudicial, it was not unduly so, and this [c]ourt did not err when it found it to be admissible.

TCO at 5-6.

We would agree with the trial court that the evidence of Appellant's membership in the gang was relevant to proving his motive for shooting the

_____

[2] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

[3] As the Commonwealth points out, both Mr. Corbin and Mr. Robinson gave "false statements to police regarding the murder" and also provided "false testimony before [a] grand jury" about the victim's killing.  Commonwealth's Brief at 7.

victim, and to explain to the jury the actions of Mr. Corbin and Mr. Robinson before, during, and after the commission of the crime. Thus, we would conclude that the court did not abuse its discretion in admitting this evidence, even had Appellant preserved this issue for our review.

In regard to the testimony indicating that Appellant regularly carried a firearm, we also would not find that the court erred in admitting this evidence. As the Commonwealth argues, the fact that Appellant "regularly carried a gun was also probative and necessary to explain why Mr. Corbin and Mr. Robinson assisted [Appellant] after the murder and why the[y] lied to investigators and initially to the grand jury." Commonwealth's Brief at 21. The Commonwealth explains that,

> [t]hroughout the litigation it was clear that [Appellant] did not plan on testifying and that defense counsel was crafting a strategy based on the understanding his client was not going to testify in support of a self-defense claim. **See** N.T. [Hearing], 7/6/[]23, [at] 16-17. This understanding continued through the close of the Commonwealth's case when [Appellant] confirmed via colloquy that he was not intending to testify. **See** N.T. [Trial], 10/5/[]23, [at] 138-39. Up until the last day of trial, when [Appellant] surprised everyone, including his own defense team, and took the stand to claim self-defense, **see generally** N.T. [Trial], 10/6/23, [at] 9-78, it was quite clear that the credibility of [Mr.] Corbin and [Mr.] Robinson [was] the primary avenue of attack for … [Appellant].
>
> Thus, it was crucial for the Commonwealth to explain to the jury why [Mr.] Corbin and [Mr.] Robinson stayed with [Appellant] after the murder, complied with his requests to destroy and conceal evidence, and [did] not cooperate with law enforcement. Their well-founded fear of reprisals from … [Appellant] was highly probative and relevant to explain these actions to the jury[,] and this is precisely what the trial court found. **See** [TCO at] 6 ("This evidence also helped the jury to understand why Commonwealth

- 11 -

witnesses Mr. Corbin and Mr. Robinson were so terrified of Appellant and helped explain their behavior prior to trial[,] including the fact that neither of them were forthcoming with information, the fact that Mr. Corbin complied when Appellant demanded the gun, and the fact that both men helped to burn the vehicle.").

[Appellant's] only argument to the contrary is that "explaining-away the conduct of co-defendants, post-crime, in an effort to make such witnesses appear more credible to a jury" is not a recognized exception … under Rule 404(b). [Appellant's Brief at] 14. [Appellant] simply misstates the law in this regard. … [T]he enumerated list of exceptions in [Rule] 404(b)(2) is not an exhaustive list of reasons for which prior or other acts can be admitted. The comments to the Rule explicitly state as much[,[4]] as does the interpretive case law. *See Commonwealth v. Johnson*, 160 A.3d 127, 144 (Pa. 2017) ([stating that] "courts are not restricted to the nine exceptions expressly listed in Rule 404(b)(2) when exercising their discretion to permit the admission of evidence of prior crimes, wrongs and acts, so long as the evidence is used for purposes other than to prove character or a propensity to act in accordance with traits of character[]").

*Id.* at 21-23.

The Commonwealth's argument would convince us that the trial court did not err in admitting the evidence that Appellant regularly carried a gun. This evidence explained the actions of both Mr. Corbin and Mr. Robinson, and was probative to refute Appellant's challenges to their credibility. We would not find that the prejudicial impact of this evidence outweighs its probative value, especially where it was vital for the Commonwealth to explain to the jury why these two witnesses initially gave conflicting stories to the

---

[4] *See* Pa.R.E. 404 Cmt ("Pa.R.E. 404(b)(2), like F.R.E. 404(b)(2), contains a *non-exhaustive list* of purposes, other than proving character, for which a person's other crimes, wrongs, or acts may be admissible.") (emphasis added).

investigating officers and the grand jury. Accordingly, even had Appellant not waived this issue for our review, we would not conclude that the trial court abused its discretion in admitting the evidence regarding his prior possession of a firearm.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2025